Wayne BECK, Plaintiff and Appellant,

v.

**FARMERS INSURANCE EXCHANGE,**
Defendant and Respondent.

No. 18926.

Supreme Court of Utah.

June 12, 1985.

Robert J. Debry, Salt Lake City, for plaintiff and appellant.

Don J. Hanson, Salt Lake City, for defendant and respondent.

ZIMMERMAN, Justice:

Plaintiff Wayne Beck appeals from a summary judgment dismissing his claim against Farmers Insurance Exchange, his automobile insurance carrier, alleging that Farmers had refused in bad faith to settle a claim for uninsured motorist benefits. We hold that on the record before us, Beck stated a claim for relief and a summary judgment was inappropriate. We reverse and remand for further proceedings consistent with this opinion.

Beck injured his knee in a hit-and-run accident on January 16, 1982, when his car was struck by a car owned by Ann Kirkland. Ms. Kirkland asserted that her car had been stolen and denied any knowledge of or responsibility for the accident. Beck filed a claim with Kirkland's insurer, but liability was denied on April 20, 1982.

At the time of the accident, Beck carried automobile insurance with Farmers. Under that policy, Beck was provided with both no-fault and uninsured motorist insurance benefits. On February 23, 1982, while his claim against Kirkland was pending, Beck filed a claim with Farmers for no-fault benefits. Sometime prior to May 26, 1982, Farmers paid Beck $5,000 for medical expenses (the no-fault policy limit) and $1,299.43 for lost wages.

On June 23, 1982, Beck's counsel filed a claim with Farmers for uninsured motorist benefits, demanding the policy limit, $20,-000, for general damages suffered as a result of the accident. His counsel alleges that the brochure documenting Beck's damages, submitted to Farmers with the June 23rd settlement offer, established that his claim was worth substantially more than $20,000. Farmers' adjuster rejected the settlement offer without explanation on July 1, 1982.

Beck filed this lawsuit one month later, on August 2, 1982, alleging three causes of

action: first, that by refusing to pay his uninsured motorist claim, Farmers had breached its contract of insurance with him; second, that by acting in bad faith in refusing to investigate the claim, bargain with Beck, or settle the claim, Farmers had breached an implied covenant of good faith and fair dealing; and third, that Farmers had acted oppressively and maliciously toward Beck with the intention of, or in reckless disregard of the likelihood of, causing emotional distress. Under the first claim, Beck sought damages for breach of contract in the amount of the policy limits; under the second, he asked for compensatory damages in excess of the policy limits for additional injuries, including mental anguish; and under the third, he sought punitive damages of $500,000.

Sometime in August of 1982, Beck's counsel contacted Farmers' counsel and offered to settle the whole matter for $20,000. This offer was rejected. Farmers filed an answer on September 1, 1982, and at the same time, moved to strike the prayer for punitive damages on the ground that they were unavailable for a breach of contract. Farmers' motion was granted. On September 29th, the trial court bifurcated the case and agreed to try the claim for failure to pay uninsured motorist benefits independent of Beck's claim alleging breach of an implied covenant of good faith and fair dealing.

Immediately after the trial judge bifurcated the case, Beck's counsel expressly revoked the previously rejected offer to settle the whole matter for $20,000. Instead, Beck offered to settle only the failure to pay the uninsured motorist benefits claim for $20,000, reserving the implied covenant or "bad faith" claim for separate resolution.

On October 20, 1982, Farmers apparently counteroffered. Negotiations proceeded, and sometime in late November, the parties agreed to settle the uninsured motorist claim for $15,000. On December 6, 1982, the parties stipulated to dismissal of that claim and specifically reserved the bad faith claim for later disposition.

In mid-December, Farmers moved to dismiss the reserved bad faith claim on two theories. First, Farmers asserted that under *Lyon v. Hartford Accident and Indemnity Co.*, 25 Utah 2d 311, 480 P.2d 739 (1971), it "had no duty to bargain with or settle plaintiff's uninsured motorist claim and, therefore, [could not] be held liable" for breach of contract or bad faith. Second, Farmers argued that even if it had some duty to bargain or to settle the claim, the facts set forth in the pleadings on file did not establish that it had breached the duty. No memoranda or factual affidavits supported this motion.

Farmers' motion was opposed by affidavits of Beck, his counsel, and a former insurance adjuster who worked for Beck's counsel as a paralegal. In his affidavit, Beck's counsel recited the dates and terms of the various settlement offers and the fact that they had been rejected without counteroffer. Beck's affidavit stated that he had accepted the $15,000 offer only because of financial pressures caused by the substantial expenses he had incurred in the ten months since the accident. The paralegal's affidavit stated that he had been an insurance adjuster for 19 years and that he had reviewed the settlement documentation submitted to Farmers in June when the claim was first filed. He expressed the opinion that a reasonable and prudent insurance company would have valued the claim at between $30,000 and $40,000 and attempted to settle the matter within weeks after the initial offer. The paralegal charged that the "only reason for such a substantial delay in settling this claim would be to put Mr. Beck in a situation of financial need and stress so that he would accept the first settlement offer," a tactic he characterized as acting in bad faith. Farmers filed no rebuttal affidavits, and the trial court granted Farmers' motion without specifying the basis for its holding.

Beck asks this Court to overrule *Lyon* and permit an insured to sue for an insurer's bad faith refusal to bargain or settle. He points out that many states now allow a tort action for breach of an insurer's duty

to deal fairly and in good faith with its insured. Assuming that we abandon *Lyon*, Beck argues that the affidavits submitted in opposition to Farmers' motion for summary judgment were sufficient to create a genuine issue of material fact as to whether Farmers breached an implied covenant of good faith and fair dealing.

Farmers does not now contend, as it did below, that it had no duty to bargain or settle. Instead, it argues that under *Lyon*, an insurer cannot be held liable for bad faith simply because it refused to bargain or to settle a claim; rather, it argues, to sustain such a claim a plaintiff must produce evidence of bad faith wholly apart from the "mere failure" to bargain or settle.

Our ruling in *Lyon* left an insured without any effective remedy against an insurer that refuses to bargain or settle in good faith with the insured. An insured who has suffered a loss and is pressed financially is at a marked disadvantage when bargaining with an insurer over payment for that loss. Failure to accept a proffered settlement, although less than fair, can lead to catastrophic consequences for an insured who, as a direct consequence of the loss, may be peculiarly vulnerable, both economically and emotionally. The temptation for an insurer to delay settlement while pressures build on the insured is great, especially if the insurer's exposure cannot exceed the policy limits. *See Lawton v. Great Southwest Fire Insurance Co.*, 118 N.H. 607, 392 A.2d 576, 579 (1978); Harvey & Wiseman, *First Party Bad Faith: Common Law Remedies and a Proposed Legislative Solution*, 72 Ky.L.J. 141, 146, 167–69 (1983–84) (hereinafter cited as "First Party Bad Faith"); Note, *The Availability of Excess Damages for Wrongful Refusal to Honor First Party Insurance Claims—An Emerging Trend*, 45 Fordham L.Rev. 164, 164–67 (Oct. 1976) (hereinafter cited as "Availability of Excess Damages").

■■■ In light of these considerations, we now conclude that an insured should be provided with a remedy. However, we do not agree with plaintiff that a tort action is appropriate. Instead, we hold that the good faith duty to bargain or settle under an insurance contract is only one aspect of the duty of good faith and fair dealing implied in all contracts and that a violation of that duty gives rise to a claim for breach of contract.[1] In addition, we do not adopt the limitation suggested by Farmers, but hold that the refusal to bargain or settle, standing alone, may, under appropriate circumstances, be sufficient to prove a breach.

We recognize that a majority of states permit an insured to institute a tort action against an insurer who fails to bargain in good faith in a "first-party" situation,[2] adopting the approach first announced by the California Supreme Court in *Gruenberg v. Aetna Insurance Co.*, 9 Cal.3d 566, 510 P.2d 1032, 108 Cal.Rptr. 480 (1973). *See, e.g., Bibeault v. Hanover Insurance Co.*, R.I., 417 A.2d 313 (1980); *Craft v. Economy Fire & Casualty Co.*, 572 F.2d 565 (7th Cir.1978) (applying Indiana law); *MFA Mutual Insurance Co. v. Flint*, Tenn., 574 S.W.2d 718 (1978). Apparently, these courts have taken this step as a matter of policy in order to provide what they perceive to be an adequate remedy for an insured wronged by an insurer's recalcitrance. These courts have reasoned that under contract law principles, an insurer who improperly refuses to settle a first-party claim may be liable only for damages measured by the maximum dollar amount

---

**1.** The Court in *Lyon* considered only the question of whether a claim of bad faith gave rise to a tort cause of action; however, to the extent that *Lyon* is philosophically inconsistent with our recognition today of a cause of action in contract, it is overruled.

**2.** We use the term "first-party" to refer to an insurance agreement where the insurer agrees to pay claims submitted to it by the insured for losses suffered by the insured. The present case involves such a first-party situation. In contrast, a "third-party" situation is one where the insurer contracts to defend the insured against claims made by third parties against the insured and to pay any resulting liability, up to the specified dollar limit.

of the insurance provided by the policy, and such a damage measure provides little or no incentive to an insurer to promptly and faithfully fulfill its contractual obligations. Accordingly, these courts have adopted a tort approach in order to allow an insured to recover extensive consequential and punitive damages, which they consider to be unavailable in an action based solely on a breach of contract. *See Availability of Excess Damages, supra,* at 168–77; *First Party Bad Faith, supra,* at 158.

■ We conclude that the tort approach adopted by these courts is without a sound theoretical foundation and has the potential for distorting well-established principles of contract law. Moreover, the practical end of providing a strong incentive for insurers to fulfill their contractual obligations can be accomplished as well through a contract cause of action, without the analytical straining necessitated by the tort approach and with far less potential for unforeseen consequences to the law of contracts.

The analytical weaknesses of the tort approach are easily seen. In *Gruenberg,* the California court held that an insurer has a duty to deal in good faith with its insured and that an insured can bring an action in tort, rather than contract, for breach of that duty because the duty is imposed by law and, being nonconsensual, does not arise out of the contract. Glossing over any distinctions between first- and third-party situations, the court concluded that the duty imposed upon the insurer when bargaining with its insured in a first-party situation is merely another aspect of the fiduciary duty owed in the third-party context. *Gruenberg v. Aetna Insurance Co.,* 9 Cal.3d at 573–74, 510 P.2d at 1037, 108 Cal.Rptr. at 485.

Although this Court, in *Ammerman v. Farmer's Insurance Exchange,* 19 Utah 2d 261, 430 P.2d 576 (1967), recognized a tort cause of action for breach of an insurer's obligation to bargain in a third-party context, we cannot agree with the *Gruenberg* court that the considerations which compel the recognition of a tort cause of action in a third-party context are present in the first-party situation. In *Ammerman,* we stated that because a third-party insurance contract obligates the insurer to defend the insured, the insurer incurs a fiduciary duty to its insured to protect the insured's interests as zealously as it would its own; consequently, a tort cause of action is recognized to remedy a violation of that duty. 19 Utah 2d at 265–66, 430 P.2d at 578–79.

■ However, in *Lyon v. Hartford Accident and Indemnity Co.,* we held that a tort cause of action did not arise in a first-party insurance contract situation because the relationship between the insurer and its insured is fundamentally different than in a third-party context:

> In the [third-party] situation, the insurer must act in good faith and be as zealous in protecting the interests of the insured as it would be in regard to its own. In the [first-party] situation, the insured and the insurer are, in effect and practically speaking, adversaries.

25 Utah 2d at 319, 480 P.2d at 745 (citations omitted). *See also Lawton v. Great Southwest Fire Insurance Co.,* 392 A.2d at 580–81.

This distinction is of no small consequence. In a third-party situation, the insurer controls the disposition of claims against its insured, who relinquishes any right to negotiate on his own behalf. *Craft v. Economy Fire & Casualty Co.,* 572 F.2d at 569. An insurer's failure to act in good faith exposes its insured to a judgment and personal liability in excess of the policy limits. *Santilli v. State Farm Life Insurance Co.,* 278 Or. 53, 61–62, 562 P.2d 965, 969 (1977). In essence, the contract itself creates a fiduciary relationship because of the trust and reliance placed in the insurer by its insured. *Cf. Hal Taylor Associates v. UnionAmerica, Inc.,* Utah, 657 P.2d 743, 748–49 (1982). The insured is wholly dependent upon the insurer to see that, in dealing with claims by third parties, the insured's best interests are protected. In addition, when dealing with third parties, the insurer acts as an agent for the insured with respect to the disputed claim. Wholly apart from the contractual

obligations undertaken by the parties, the law imposes upon all agents a fiduciary obligation to their principals with respect to matters falling within the scope of their agency. *Id.* at 748; *see generally* 3 Am. Jur.2d *Agency* § 199 (1962).

In the first-party situation, on the other hand, the reasons for finding a fiduciary relationship and imposing a corresponding duty are absent. No relationship of trust and reliance is created by the contract; it simply obligates the insurer to pay claims submitted by the insured in accordance with the contract. *Santilli v. State Farm Life Insurance Co.*, 278 Or. at 61–62, 562 P.2d at 969. Furthermore, none of the indicia of agency are present. *See generally Duncan v. Andrew County Mutual Insurance Co.*, Mo.App., 665 S.W.2d 13, 18–20 (1984).

Clearly, then, it is difficult to find a theoretically sound basis for analogizing the duty owed in a third-party context to that owed in a first-party context. And wholly apart from any theoretical problems, tailoring the tort analysis to first-party insurance contract cases has proven difficult. The pragmatic reason for adopting the tort approach is that it exposes insurers to consequential and punitive damages awards in excess of the policy limits. However, the courts appear to have had difficulty in developing a sound rationale for limiting the tort approach to insurance contract cases. This may be because there is no sound theoretical difference between a first-party insurance contract and any other contract, at least no difference that justifies permitting punitive damages for the breach of one and not the other. In any event, the tort approach and the accompa-

nying punitive damages have moved rather quickly into areas far afield from insurance. *See, e.g., Seaman's Direct Buying Service, Inc. v. Standard Oil Co.*, 36 Cal.3d 752, 686 P.2d 1158, 1166–67, 206 Cal.Rptr. 354, 362–63 (1984); *Wallis v. Superior Court*, 160 Cal.App.3d 1109, 207 Cal.Rptr. 123, 127–29 (1984); *Gates v. Life of Montana Insurance Co.*, Mont., 668 P.2d 213, 214–16 (1983).

Furthermore, the courts adopting the tort approach have had some difficulty in determining what degree of bad faith is necessary to sustain a claim. *E.g., Anderson v. Continental Insurance Co.*, 85 Wis.2d 675, 692–94, 271 N.W.2d 368, 376–77 (1978). From a practical standpoint, the state of mind of the insurer is irrelevant; even an inadvertent breach of the covenant of good faith implied in an insurance contract can substantially harm the insured and warrants a remedy.

■ ■ We therefore hold that in a first-party relationship between an insurer and its insured, the duties and obligations of the parties are contractual rather than fiduciary. Without more, a breach of those implied or express duties can give rise only to a cause of action in contract, not one in tort.[3] This position has not been widely adopted by other courts, although a "respectable body of authority" is developing. *See Duncan v. Andrew County Mutual Insurance Co.*, 665 S.W.2d at 18–19, and cases cited therein; *Lawton v. Great Southwest Fire Insurance Co.*, 118 N.H. 607, 392 A.2d 576 (1978); *Kewin v. Massachusetts Mutual Life Insurance Co.*, 409 Mich. 401, 295 N.W.2d 50 (1980); *Avail-*

---

**3.** We recognize that in some cases the acts constituting a breach of contract may also result in breaches of duty that are independent of the contract and may give rise to causes of action in tort. *Hal Taylor Assoc. v. UnionAmerica*, 657 P.2d at 750; *Lawton v. Great Southwest Fire Ins. Co.*, 392 A.2d at 580. For example, the law of this state recognizes a duty to refrain from intentionally causing severe emotional distress to others. *Samms v. Eccles*, 11 Utah 2d 289, 358 P.2d 344 (1961). Thus, intentional and outrageous conduct by an insurer against an insured, coupled with a failure to bargain, could

conceivably result in tort liability independent of (and concurrent with) liability for breach of contract. Additionally, the facts that give rise to a breach of the duty to bargain in good faith could also amount to fraudulent activity, rendering an insurer independently liable for damages flowing from the fraud. *See Wetherbee v. United Ins. Co.*, 265 Cal.App.2d 921, 71 Cal.Rptr. 764 (1968). Also, under various unfair practices acts, there may be statutory requirements that give rise to independent causes of action. *E.g.,* U.C.A., 1953, §§ 31–27–1 to –24.

*ability of Excess Damages, supra* p. 4, at 168–71. We further hold that as parties to a contract, the insured and the insurer have parallel obligations to perform the contract in good faith, obligations that inhere in every contractual relationship. *State Automobile & Casualty Underwriters v. Salisbury,* 27 Utah 2d 229, 232, 494 P.2d 529, 531 (1972); *Leigh Furniture & Carpet Co. v. Isom,* Utah, 657 P.2d 293, 306 (1982).[4]

Few cases define the implied contractual obligation to perform a first-party insurance contract in good faith. However, because the considerations are similar, we freely look to the tort cases that have described the incidents of the duty of good faith in the context of first-party insurance contracts. From those cases and from our own analysis of the obligations undertaken by the parties, we conclude that the implied obligation of good faith performance contemplates, at the very least, that the insurer will diligently investigate the facts to enable it to determine whether a claim is valid, will fairly evaluate the claim, and will thereafter act promptly and reasonably in rejecting or settling the claim. *See Anderson v. Continental Insurance Co.,* 85 Wis.2d at 692–93, 271 N.W.2d at 377; *Egan v. Mutual of Omaha Insurance Co.,* 24 Cal.3d 809, 818–19, 620 P.2d 141, 145–46, 169 Cal.Rptr. 691, 695–96 (1979). The duty of good faith also requires the insurer to "deal with laymen as laymen and not as experts in the subtleties of law and underwriting" and to refrain from actions that will injure the insured's ability to obtain the benefits of the contract. *MFA Mutual Insurance Co. v. Flint,* 574 S.W.2d at 720, *quoting Merchants Indemnity Corp. v. Eggleston,* 37 N.J. 114, 122, 179 A.2d 505, 509 (1962); *accord Bowler v. Fidelity & Casualty Co.,* 53 N.J. 313, 327, 250 A.2d 580, 587 (1969). These performances are the essence of what the insured has bargained and paid

for, and the insurer has the obligation to perform them. When an insurer has breached this duty, it is liable for damages suffered in consequence of that breach.

In adopting the contract approach, we are not ignoring the principal reason for the adoption of the tort approach—to provide damage exposure in excess of the policy limits and thus remove any incentive for breaching the duty of good faith. Despite what some courts have suggested, *e.g., Santilli v. State Farm Insurance Co.,* 562 P.2d at 969, and what some commentators have asserted, *e.g.,* J. Appleman, *Insurance Law & Practice* § 8878.15 at 424–26 (1981), there is no reason to limit damages recoverable for breach of a duty to investigate, bargain, and settle claims in good faith to the amount specified in the insurance policy.[5] Nothing inherent in the contract law approach mandates this narrow definition of recoverable damages. Although the policy limits define the amount for which the insurer may be held responsible in performing the contract, they do not define the amount for which it may be liable upon a breach. *Lawton v. Great Southwest Fire Insurance Co.,* 392 A.2d at 579.

Damages recoverable for breach of contract include both general damages, *i.e.,* those flowing naturally from the breach, and consequential damages, *i.e.,* those reasonably within the contemplation of, or reasonably foreseeable by, the parties at the time the contract was made. *Pacific Coast Title Insurance Co. v. Hartford Accident & Indemnity Co.,* 7 Utah 2d 377, 379, 325 P.2d 906, 907 (1958), *citing Hadley v. Baxendale,* 9 Exch. 341, 156 Eng.Rep. 145 (1854). We have repeatedly recognized that consequential damages for breach of contract may reach beyond the bare contract terms. *See, e.g., Pacific Coast Title Insurance Co. v. Hartford Accident & Idemnity,* 7 Utah 2d at 379, 325 P.2d at 908

---

4. The duty to perform the contract in good faith cannot, by definition, be waived by either party to the agreement.

5. In *Ammerman,* we suggested in dicta that in an action for breach of an insurance policy, the damages could not exceed the policy limits. 19 Utah 2d at 264, 430 P.2d at 578. We expressly disavow this dicta.

(attorney fees incurred for settling and defending claims were foreseeable result of contractor's default); *Bevan v. J.H. Construction Co.,* Utah, 669 P.2d 442, 444 (1983) (home purchasers entitled to damages for loss of favorable mortgage interest rate resulting from builder's breach of contract).

In an action for breach of a duty to bargain in good faith, a broad range of recoverable damages is conceivable, particularly given the unique nature and purpose of an insurance contract. An insured frequently faces catastrophic consequences if funds are not available within a reasonable period of time to cover an insured loss; damages for losses well in excess of the policy limits, such as for a home or a business, may therefore be foreseeable and provable. *See, e.g., Reichert v. General Insurance Co.,* 59 Cal.Rptr. 724, 728, 428 P.2d 860, 864 (1967), *vacated on other grounds,* 68 Cal.2d 822, 442 P.2d 377, 69 Cal.Rptr. 321 (1968) (because bankruptcy was a foreseeable consequence of fire insurer's failure to pay, insurer was liable for consequential damages flowing from bankruptcy). Furthermore, it is axiomatic that insurance frequently is purchased not only to provide funds in case of loss, but to provide peace of mind for the insured or his beneficiaries. Therefore, although other courts adopting the contract approach have been reluctant to allow such an award, *Lawton v. Great Southwest Fire Insurance Co.,* 392 A.2d at 581–82, we find no difficulty with the proposition that, in unusual cases, damages for mental anguish might be provable.[6] *See Kewin v. Massachusetts Mutual Life Insurance Co.,* 409 Mich. at 440–55, 295 N.W.2d at 64–72 (Williams, J., dissenting); *cf. Lambert v. Sine,* 123 Utah 145, 150, 256 P.2d 241, 244 (1953). The foreseeability of any such damages will always hinge upon the nature and language of the contract and the reasonable expectations of the parties. J. Calamari &

J. Perillo, *Contracts* § 14–5 at 523–25 (2d ed. 1977).

With the foregoing principles in mind, we return to a consideration of the present case. The trial court granted summary judgment for the insurer in the face of affidavits of the insured, his counsel, and a paralegal who had been an adjuster for many years. In the absence of any responsive affidavits, we take the assertions of the affidavits as true and view all unexplained facts in a light most favorable to Beck. It appears that the insurer was served with Beck's claim on June 23, 1982. On July 1st, the claim was rejected without explanation and without any request for additional facts. The insured heard nothing more from the insurer until after August 2d, when this suit was filed. The affidavits state that the insured accepted the settlement offered by the insurer in late October because of the financial pressure caused by the delay in resolving the matter. The affidavits also offer the opinion of the expert adjuster turned paralegal that the delay was in bad faith.

From January until late June, Beck was apparently negotiating with the car owner's carrier and not with Farmers, for no claim was filed with Farmers until June 23rd. Therefore, none of the delay between January and June 23rd can be attributed to Farmers. The unexplained delay thereafter, however, together with a flat rejection of plaintiff's offer, provides a factual basis for this cause of action sufficient to withstand summary judgment. Farmers had an obligation to diligently investigate and evaluate Beck's claim. It rejected the claim in one week, and we must infer that the insurer did nothing to investigate or evaluate the claim during the following month.

Under these circumstances and resolving all doubts in Beck's favor, we cannot say that a jury could not find that Farmers breached its duty of good faith in rejecting Beck's claim without explanation

---

**6.** Clearly, damages will not be available for the mere disappointment, frustration, or anxiety normally experienced in the process of filing an insurance claim and negotiating a settlement with an insurer.

and in failing to further investigate the matter. Therefore, we remand the matter to the trial court for further proceedings.

HALL, C.J., and STEWART, HOWE and DURHAM, JJ., concur.