John CHATTERTON, Plaintiff and Appellee,

v.

Joseph L. WALKER, Defendant.

State Farm Mutual Automobile Insurance Company, Intervenor and Appellant.

Nos. 950129, 950382.

Supreme Court of Utah.

March 7, 1997.

Rehearing Denied May 21, 1997.

---

Thomas W. Seiler, Provo, for plaintiff.

Glenn C. Hanni, Stuart H. Schultz, Salt Lake City, for intervenor.

STEWART, Associate Chief Justice:

This interlocutory appeal is brought by intervenor State Farm Mutual Automobile Insurance Company, plaintiff John Chatterton's insurer. Chatterton filed suit against defendant Joseph L. Walker after the two were involved in an automobile accident in which Walker rear-ended Chatterton. Walker carried no liability insurance at the time and failed to appear to defend the suit. Because Chatterton's insurance policy by law includes uninsured motorist protection, State Farm, pursuant to Utah Rule of Civil Procedure 24, intervened to protect its own interests under that policy. State Farm now appeals the district court's entry of default judgment against Walker on the issue of liability and also appeals certain district court rulings relating to discovery requests propounded by Chatterton.

## I.  BACKGROUND

The accident occurred in August of 1991. Walker carried no liability insurance at the time. Chatterton sued Walker for personal injuries and property damages, effecting service of process by publication.[1] State Farm moved to intervene in the litigation between Chatterton and Walker, and the trial court granted the motion. Walker failed to answer or otherwise respond to Chatterton's complaint, but State Farm filed an answer deny-

---

1. Chatterton was granted permission to serve Walker in this manner after discovering that Walker had apparently left the state and no use-ful information could be obtained on his whereabouts.

ing Walker's liability and Chatterton's allegations of injuries and damages.

Chatterton propounded his first set of discovery requests on State Farm. In its responses to requests for admissions, State Farm conceded that Walker had been negligent but contested the degree of that negligence and Chatterton's lack of negligence. In particular, State Farm asserted that Chatterton's brake lights were not functioning properly at the time of the accident.

On November 3, 1994, Chatterton filed a praecipe upon default against Walker and served it on State Farm by mail. One day later, the deputy clerk entered a default certificate against Walker. A proposed default judgment was mailed to State Farm on November 7, 1994. On November 15, 1994, State Farm filed an objection to Chatterton's praecipe and default judgment on the ground that entry of a default judgment against Walker would prejudice State Farm's rights as an intervenor.

Despite State Farm's objections, and without oral argument, the district court entered a default judgment against Walker, finding that Walker was negligent and solely liable and that as a proximate result of Walker's negligence, Chatterton suffered special and general damages in an amount to be proven at an evidentiary hearing. State Farm then moved to set aside the default judgment. The district court denied that motion, concluding that the "[i]ntervenor could not adequately represent the ... motorist" and "the interests of the carrier and the uninsured motorist were and are distinguishable." The court further ruled that the default judgment had resolved the issue of liability and that "the only issue remaining for trial is the determination of damages as well as the issue of liability under the insurance contract between State Farm and Plaintiff."

State Farm's intervention also provoked disputes concerning discovery. Chatterton submitted a second set of interrogatories to State Farm requesting information on all cases in which State Farm had paid benefits for a particular type of injury. State Farm objected to these interrogatories, arguing

that their only conceivable relevance was to demonstrate a bad faith refusal to pay benefits similar to those that had been paid in other cases. State Farm argued that it should not be obligated to respond to the discovery requests because Chatterton had not made any claims against State Farm on that issue and the requests were either burdensome or privileged as work product. State Farm filed a motion for a protective order, which the district court denied.[2] State Farm petitioned for, and we granted, an interlocutory appeal on the issues of whether State Farm, as an intervenor, must be allowed to contest Walker's liability and whether the trial court properly denied State Farm's motion for a protective order as to Chatterton's second set of discovery requests.

## II. THE TRIAL COURT'S ENTRY OF DEFAULT JUDGMENT

■ The first issue is whether the district court erred in entering the default judgment against Walker and in refusing to set aside its default judgment. The district court's order was based on the conclusion that State Farm, as an intervenor, could not raise defenses available to Walker with respect to liability. We review legal conclusions employed to justify entry of default judgment for correctness and accord no deference to the trial court on that issue. *Erickson v. Schenkers Int'l Forwarders, Inc.*, 882 P.2d 1147, 1148 (Utah 1994).

State Farm asserts that our holding in *Lima v. Chambers*, 657 P.2d 279, 284 (Utah 1982), precludes entry of a default judgment against an uninsured defendant where an insurer who provides uninsured motorist protection has intervened and contested the issues concerning the defendant's liability. Chatterton concedes that *Lima* affords an insurer the right to intervene but argues that *Lima* does not give the insurer the power to prevent the entry of judgment against a defaulting uninsured motorist. In the alternative, Chatterton contends that State Farm did not timely object to the entry of the

---

2. State Farm was, however, apparently allowed to modify the scope of some of its responses, producing a smaller portion of its records than Chatterton had originally requested.

default judgment and that instead of filing the answer in its own name, State Farm should have filed an answer on Walker's behalf.

In *Lima*, the defendant motorist, representing himself, executed an affidavit admitting he was uninsured and solely liable.[3] The plaintiff obtained summary judgment on the issue of liability, leaving the question of damages to be decided at trial. At that point, the plaintiff's insurer petitioned for intervention, and the district court denied the petition.[4] In addressing the insurer's appeal, we noted that the scope and right of intervention is governed by Rule 24(a) of the Utah Rules of Civil Procedure. 657 P.2d at 281. At that time, Rule 24(a) allowed intervention of right "[u]pon timely application ... when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action." We then analyzed the case in light of the four factors established by that rule:

> [A]n applicant must be allowed to intervene if four requirements are met: 1) the application is timely; 2) the applicant has an interest in the subject matter of the dispute; 3) that interest is or may be inadequately represented; and 4) the applicant is or may be bound by a judgment in the action.

*Lima*, 657 P.2d at 282. We found that in light of those factors, the insurer was entitled to intervene. In particular, we ruled that the insurer had an interest in the suit between its insured and the uninsured motorist, that the insurer's interest was inadequately represented by the pro se defendant in that particular case, and that as a practical matter the insurer would be bound by the judgment. *Id.* at 282–84. The insurer in *Lima* thus had a right to intervene that encompassed the right to litigate all tort issues and "'take whatever legal steps were necessary and fitting ... to insure that the judgment against the uninsured motorist ... was rendered on legal and sufficient evidence.'" *Id.* at 282 (quoting *State Farm Mut. Auto. Ins. Co. v. Glover*, 113 Ga.App. 815, 149 S.E.2d 852, 856 (1966)).

Since we decided *Lima*, however, Rule 24(a) has been amended. It now states in pertinent part:

> Upon timely application anyone shall be permitted to intervene in an action ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Utah R.Civ.P. 24(a). Instead of requiring applicants to show that they will be "bound by a judgment in the action," the rule now requires applicants to demonstrate only that "the disposition of the action may as a practical matter impair or impede [their] ability to protect that interest." Thus, the text of Rule 24 now mandates intervention on even more liberal terms than it did when we issued *Lima*.

In this case, unlike *Lima*, where the insurer failed to intervene until after the issue of liability had been settled, State Farm successfully intervened before liability had been established and raised defenses relating to contributory negligence and proximate cause. The district court nevertheless entered default judgment against Walker, specifically finding Walker solely liable for the accident and refusing to allow State Farm to defend

3. The defendant in *Lima* originally retained counsel, but his counsel withdrew after filing an answer to the complaint. The plaintiff's counsel then prepared the affidavit, which the unrepresented defendant signed.

4. The district court's denial was based upon precedent which we overruled in *Lima*. As we noted in *Lima*, three of our prior cases dealt with attempts to "involve an uninsured motorist insurance carrier in the tort litigation between the insured and the uninsured tortfeasor." 657 P.2d at 281. In *Christensen v. Peterson*, 25 Utah 2d 411, 412–14, 483 P.2d 447, 447–49 (1971), we held that the plaintiff could not join the insurer as a defendant in cases against uninsured tortfeasors. In *Kesler v. Tate*, 28 Utah 2d 355, 355, 502 P.2d 565, 566 (1972), we disallowed insurers from intervening as party defendants in uninsured motorist cases. And in *Wright v. Brown*, 574 P.2d 1154, 1155 (Utah 1978), we held that nonparty insurers could not appeal judgments entered against uninsured defendant motorists.

on that issue. If the district court's ruling stands, State Farm's insurance contract with Chatterton expressly renders it liable within its policy limits for the damages caused by Walker. Chatterton defends the district court's rulings by essentially asserting that *Lima* should be limited to its particular facts—i.e., that the insurer's right of intervention articulated in *Lima* may be exercised with respect to issues concerning damages but not with respect to issues concerning liability.

We find no basis for limiting the principles articulated in *Lima* in such an arbitrary manner. Nothing in Rule 24 indicates that a distinction should be drawn between evidentiary procedures designed to assess liability and those directed toward determining damages. Authorities treating the federal counterpart to the Utah rule have specifically noted, "Rule 24(a) does not authorize the imposition of [such] conditions." [5] 7C Charles Alan Wright et al., *Federal Practice and Procedure*, § 1922, at 505 (1986). Nor is there any substantial policy reason for treating them differently. In this case, each of

the four factors identified by *Lima* are equally, if not more, applicable to State Farm's intervention on the issue of liability: (1) State Farm filed a timely application for intervention, attempted to interpose a timely objection to entry of default,[6] and timely moved to set aside the default judgment;[7] (2) State Farm has an interest in the dispute; (3) the absent defendant cannot represent his own interests, let alone those of State Farm; and (4) State Farm's ability to protect its interest is seriously impaired, if not altogether compromised, by the district court's entry of a default judgment on the issue of liability.

Other jurisdictions faced with similar cases have almost uniformly allowed an intervening insurer to litigate all tort issues in uninsured motorist cases. *See, e.g., Vernon Fire & Casualty Ins. Co. v. Matney*, 170 Ind.App. 45, 351 N.E.2d 60, 64–65 (1976); *Beard v. Jackson*, 502 S.W.2d 416, 419 (Mo.Ct.App. 1973); *Heisner v. Jones*, 184 Neb. 602, 169 N.W.2d 606, 612 (1969); *Fetch v. Quam*, 530 N.W.2d 337, 338–39 (N.D.1995). These cases have followed a relatively pragmatic and sensible approach to the inherent dilemmas pre-

---

**5.** This is not to say that Rule 24(a) does not impose limitations on the scope and right of intervention. Those limitations are expressed by the rule itself and are related primarily to the scope of the intervenor's interests and the timeliness of the intervenor's application after adequate notice of the action. The insurer in *Lima* apparently forfeited its right to intervene on the issue of liability by failing to intervene until after the defendant had formally conceded the issue. 657 P.2d at 280.

**6.** We find no merit in Chatterton's contention that State Farm's objection to the entry of default was not timely. A considerable amount of argument is offered by both Chatterton and State Farm regarding the procedural timing of the various documents pertaining to the default judgment. The proposed default judgment was submitted to the district court and a copy mailed to State Farm on November 7, 1994. State Farm filed its objection to the default on November 15. The district court signed the default judgment that same day. Chatterton asserts that State Farm failed to act in a timely manner. State Farm contends that Utah Rule of Judicial Administration 4–504(2) allowed it five days to respond to the proposed judgment and that, because it was served by mail, that time period must be enlarged by three days pursuant to Utah Rule of Civil Procedure 6(e). These arguments, however, are merely tangential to the main issue— whether it was proper for the district court to enter the default judgment at all. Regardless of

whether State Farm filed a timely objection to the proposed judgment, the district court had a full opportunity to treat that issue when State Farm moved to set aside the judgment. The district court based its refusal to set aside the default judgment on the merits, not on any purported procedural failure. There is no indication that the result in the district court would have been any different or that any prejudice would have been avoided if State Farm had filed its objection to the default judgment any earlier. Therefore, State Farm adequately preserved the issue in the district court, and the district court's order refusing to set aside the default provided State Farm with an appealable interlocutory order.

**7.** It is not clear precisely which provision of Rule 60(b) State Farm invoked in its attempt to set aside the default judgment. State Farm essentially alleged that the district court premised its entry of judgment on an invalid legal ground. Subsection 7 of Rule 60(b) allows relief from judgment for "any other reason justifying relief from the operation of the judgment." In the context of this case, where State Farm has vigorously and timely resisted the entry of default throughout the proceedings, the incorrect legal conclusion on which the entry of default judgment was premised qualified as a "reason justifying relief."

sented by uninsured motorist clauses. The essential problem concerns the issue of whether the questions of contractual and tort liability should be resolved in a single action with a single outcome or in two actions with potentially conflicting outcomes. This issue arises because an uninsured motorist clause is invoked in circumstances where the insurer bears contractual liability within the limits of the policy and to the extent that the uninsured motorist bears tort liability. The insured motorist must at some point demonstrate the uninsured motorist's tort liability to collect on the contract with the insurer. Therefore, the procedure for collecting on uninsured motorist coverage could require the tort claim against the uninsured motorist and the contract claim against one's own insurer to be brought in a single action, or the procedure could require the insured motorist to first litigate a tort action against the uninsured motorist and then bring a separate contract action against the insurer.

Where, as here, "any action on the contract is inseparably tied to the legal liability of [the uninsured motorist]," *Vernon,* 351 N.E.2d at 64, inflicting such redundant procedures upon courts and litigants makes little sense. *Briggs v. American Family Mut. Ins. Co.,* 833 P.2d 859, 863 (Colo.Ct.App. 1992); *Vernon,* 351 N.E.2d at 64; *Heisner,* 169 N.W.2d at 611–12; *Witter v. Nesbit,* 878 S.W.2d 116, 119–20 (Tenn.Ct.App.1993). Not only is such a multiplicity of lawsuits burdensome, the results of separate proceedings may conflict, *see Witter,* 878 S.W.2d at 119, which causes confusion and harms the credibility of the judicial system.[8] *Vernon,* 351 N.E.2d at 64.

■ The incongruous situation provoked by the district court's grant of default judgment in this case amply illustrates the nega-

tive consequences of piecemeal application of the right of intervention. State Farm intervened early in the litigation between Chatterton and Walker and made clear its intention to contest issues relating to both liability and damages. Yet, the district court ruled that State Farm had no right to litigate issues of Walker's tort liability, the establishment of which was a predicate to Chatterton's claim against State Farm under the uninsured motorist coverage. Consequently, either State Farm would be denied the opportunity to contest its liability, which would constitute an abrogation of its right to due process, or State Farm would not be bound by the default entered against Walker, which would necessitate a separate proceeding to relitigate the issue of Walker's liability.

Neither of these results is acceptable. Under the district court's ruling, State Farm's "right" of intervention was essentially reduced to the empty privilege of "sit[ting] in court and watch[ing] plaintiff take a default from the vantage point of counsel table instead of from the back benches." *Beard,* 502 S.W.2d at 419; *see also* 3B James W. Moore, *Moore's Federal Practice,* ¶ 24.16[4] (1996) ("It would be meaningless to give the intervenor an absolute right to intervene in order to protect its interest, if once in the proceeding it were barred from raising questions necessary for that protection."). The district court's attempt to enforce distinctions between Walker's interests and State Farm's interests thus served no valid end. "The purpose of mandatory uninsured-motorist insurance is 'protection equal to that which would be afforded if the offending motorist carried liability insurance.... [T]he insurer stands in the shoes of the uninsured motorist and must pay if [the motorist] would be required to pay.'"[9] *Fetch,* 530 N.W.2d at

---

8. In treating the issue of whether uninsured motorist cases should be resolved by a single proceeding, a number of courts have taken the analysis one step further and held that, where an insurer receives proper notice of an action concerning its contractual obligations under an uninsured motorist clause, failure to intervene constitutes a waiver of the insurer's right to litigate the uninsured's liability. The judgment in the case against the uninsured motorist becomes binding on the nonintervening insurer as well. *See Briggs,* 833 P.2d at 864; *Beard,* 502

S.W.2d at 418; *Heisner,* 169 N.W.2d at 612; *Keel v. MFA Ins. Co.,* 553 P.2d 153, 158–59 (Okla. 1976).

9. This does not mean, however, that the insurer has any right or obligation to enter an appearance on the uninsured motorist's behalf. The basis of the insurer's liability in these cases is contractual, not vicarious; and Rule 24(a) makes clear that intervention is granted for the intervenor's own interests, not those of the uninsured motorist. We therefore reject Chatterton's argu-

339 (quoting 8C John A. Appleman & Jean Appleman, *Insurance Law and Practice*, § 5086, at 307, 309–10 (first alteration in original)).

The only justification offered in defense of limiting the right of intervention is the insurer's potential conflict of interest. The conflict of interest generated by uninsured motorist protection is indeed problematic. Individuals naturally look upon their relationship with their insurer as a protective relationship. This view must of course be tempered by the knowledge that an insurer will often aggressively investigate an insured's claim to verify the accuracy and veracity of that claim.[10] The insurer nonetheless stands in a position of obligation to remedy injuries and damages incurred and to defend against claims or counterclaims in the event of an accident. It is certainly unsettling for the insured when that insurer appears in court and presents itself in a thoroughly adversarial posture—indeed even taking up the defense of the other motorist's position and arguments.

Nevertheless, we implicitly rejected this rationale in *Lima*, 657 P.2d at 282–84, by allowing an insurer to adopt precisely that posture with respect to the issue of damages. We further observe in this case that the dilemma is inherent in uninsured motorist protection and cannot be obviated by forcing the insured to litigate the claims against the tortfeasor and the insurer separately. *See Briggs*, 833 P.2d at 863–64; *Vernon*, 351 N.E.2d at 64–65. *But see Allstate Ins. Co. v. Hunt*, 450 S.W.2d 668, 671–72 (Tex.Civ.App. 1970) (holding that potential for conflict of interest precludes insurer from participating in defense of uninsured motorist). In any separate action brought by the insured to enforce the provisions of the insurance contract, the insurer is placed in precisely the same adversarial position, litigating precisely the same claims. *See Briggs*, 833 P.2d at 863–64; *Vernon*, 351 N.E.2d at 65. Such a process merely multiplies the burdens placed on all parties without alleviating the dilemma faced by the insurer and without offering any genuine additional protection to the interests of the insured.

To the extent conflicts of interest threaten to harm the integrity of the proceeding, courts should, however, take reasonable measures to minimize the impact of the conflict. As noted by the court in *Fetch*:

> Of course, conflicts of interest will exist when an insurer intervenes in an action between its insured and an uninsured motorist.... However, this is like the "common situation where the carrier has coverage on two insureds involved in the same accident." By equating this situation with a contest between two insureds of the same insurer, the trial court can defuse these conflicts by requiring the insurer to furnish independent counsel to represent the insured on the insurer's claims and defenses, or by requiring reimbursement of the insured's reasonable attorney fees for those services.

530 N.W.2d at 340 (quoting *Heisner*, 169 N.W.2d at 612). Such a solution provides the additional benefit of minimizing or eliminating expensive tactical maneuvers that are collateral to the real issue. When insurers intervene in litigation between their insureds and uninsured motorists, the insureds face the expensive dilemma of challenging the extensive legal resources of their insurers. Insurers may be tempted to employ this advantage to compel settlement for less than the fair value of the claims under the uninsured motorist provision;[11] and if insureds must pay for their own legal expenses, they may then be tempted to right the balance

---

ment that State Farm could or should have submitted an answer in Walker's name.

**10.** We also note that an insurer has an obligation not merely to its own stockholders, but also to its other policyholders, to assure that when it makes payment on a claim, there is a legitimate legal basis for making that payment.

**11.** This is not an uncommon scenario in litigation. Litigants always have an incentive to settle for less than they believe their claim is actually worth as long as the amount of the reduction is less than the anticipated cost of the litigation. In this situation, however, intervention is granted for the narrow purpose of guaranteeing that circumstances beyond the insurer's control do not result in an inaccurate calculation of the insurer's contractual liability. If an insurer employs its standing as an intervenor to compel settlement for a sum that is less than the fair amount it owes on the uninsured motorist clause, then the purpose for which intervention was granted,

with tactical maneuvers primarily designed to increase the expense of the litigation for the insurer, without elucidating the real issue of calculating the uninsured motorist's liability. By requiring insurers to pay the expenses devolving on their insureds by reason of the insurers' intervention, the incentive for tactical maneuvering unrelated to the real issue in dispute (i.e., the question of and the amount of the uninsured motorist's liability), is minimized.[12]

In sum, we hold that an insurer providing uninsured motorist coverage to an insured involved in an accident may intervene in an action to determine the liability of an uninsured motorist. The insurer should be "permitted to raise all defenses to [the allegations of the uninsured motorist's negligence]—both affirmative and negative— which the defendant ... could have raised had [the defendant] appeared." *Beard,* 502 S.W.2d at 419. To focus the resulting litigation between the intervenor and its insured on the issue of the uninsured motorist's negligence, and to alleviate the potential conflicts of interest which arise as a consequence of the insurer's intervention, we likewise hold that an intervening insurer may be required to provide independent legal counsel to its insured or to reimburse its insured for reasonable legal expenses incurred in defending against the insurer's intervention. The provision of counsel or reimbursement of expenses should be directly related to litigation of the issue of the uninsured motorist's negligence and the damages resulting from that negligence and should not implicate collateral issues relating to the insurer's intervention.

## III. STATE FARM'S MOTION FOR PROTECTIVE ORDER

State Farm also appeals the district court's refusal to grant a protective order

relieving State Farm of the burden of answering Chatterton's second set of interrogatories. Chatterton originally propounded those interrogatories on June 10, 1994. The twenty-four interrogatories [13] can be divided into roughly three categories: (1) complete case file information on cases involving specified circumstances similar to Chatterton's accident and injuries, (2) comprehensive information on State Farm's policies and procedures for handling uninsured motorist claims, and (3) detailed information on all internal aspects of State Farm's processing of Chatterton's claim.

State Farm objected on multiple grounds, asserting that all the interrogatories were irrelevant to the question and amount of Walker's liability, that some of them were unduly burdensome, and that some of them violated the work product privilege. In particular, State Farm repeatedly objected to the interrogatories numbered three, four, and five, which required State Farm to provide detailed information on all claims since August of 1992 involving temporomandibular joint (TMJ) injuries, all claims involving rear-end collisions where State Farm had asserted that the motorist who had been rear-ended was at fault, and all claims involving rear-end collisions where State Farm had asserted that the motorist who was rear-ended was not at fault. State Farm asserted that its files were not indexed in a manner that allowed it to retrieve information on those particular topics, and as a consequence it would have to review manually the majority of its claim files in the United States and Canada, which would involve hundreds of thousands of labor hours.

After a substantial number of motions and arguments, the district court, in orders dated

---

i.e., accurate calculation of the insurer's contractual liability, is thwarted.

12. This is not to say that no tactical element or incentive for settlement remains. The inherent uncertainty of the outcome of the litigation provides a continuing incentive for settlement. Nevertheless, that incentive is directly related to the issue in controversy rather than to collateral issues surrounding the unusual posture in which the insurer and the insured are placed by virtue of the insurer's intervention. Where the uncer-

tainty of the outcome provides the incentive for settlement, the litigants are merely trading a certain outcome for an uncertain one, thereby relieving themselves and the legal system of the burden of going forward with the case. This is precisely the type of settlement courts should encourage.

13. The interrogatories were numbered up to twenty-five, but no interrogatory was numbered thirteen.

February 28 and August 28, 1995, rejected State Farm's objections in substance but agreed to place certain restrictions on the scope of the discovery. The court limited State Farm's obligation to produce claim files to those within the state of Utah within the past two years. Moreover, in light of the court's entry of default judgment, State Farm was required to answer only those questions which related to the remaining issue of the damages suffered by Chatterton. The order of August 28 afforded State Farm ten days from its entry to provide the requested information.

On September 1, 1995, State Farm moved to stay that order pending its petition for interlocutory appeal to this court. Concurrently, State Farm apparently provided answers to most of the interrogatories, provided a partial answer to number three,[14] and refused to answer numbers four and five.[15] To the degree State Farm has fully responded to the interrogatories, its appeal with respect to them is now moot. It is unclear from the record, however, which interrogatories have been answered and whether they have been answered satisfactorily. The parties have failed to elucidate those questions in their briefs. In the trial court, Chatterton specifically objected to State Farm's failure to respond to interrogatories four and five and to the adequacy of State Farm's answers to interrogatories six, seven, eight (relating to State Farm's policies and procedures for handling uninsured motorist claims), and seventeen.

State Farm argues that (1) the information sought in the interrogatories is irrelevant to the action, (2) the interrogatories are unduly burdensome and expensive, and (3) the work product doctrine bars discovery of some of the information requested in the interrogatories. As we find the first argument dispositive, we do not address the others. Rule 26 in pertinent part provides:

> Parties may obtain discovery regarding any matter, not privileged, *which is relevant* to the subject matter involved in the pending action.... It is not a ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Utah R.Civ.P. 26(b)(1) (emphasis added). As already noted, State Farm's scope of intervention is limited to issues related to Walker's liability and the damages resulting from that liability. The extensive legal maneuvering occasioned by the discovery issues in this case has accomplished virtually nothing in regard to those issues. Rather, Chatterton has propounded extensive discovery that he has conceded is primarily directed at exploring the possibility of pursuing a bad faith claim against State Farm. Nothing in Chatterton's complaint would even arguably provide a basis for such a claim. As it has not yet been determined whether State Farm is liable for payment under the uninsured motorist provision, there is no ground upon which to construct a case against State Farm for bad faith. *See generally Billings v. Union Bankers Ins. Co.*, 918 P.2d 461, 465 (Utah 1996); *Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 800–01 (Utah 1985).

---

**14.** State Farm had previously asserted that answering interrogatories three, four, and five for the relevant period in Utah would require nearly four hundred thousand labor hours and would cost roughly eight million dollars. In its efforts to respond to interrogatory number three, State Farm eventually reviewed some 2,800 claim files, which required over 800 hours of labor at a total estimated cost of approximately $11,000, not including attorney fees. Fifty-one files were located in which TMJ or other jaw injuries were alleged. State Farm asserted that this was only one-fifth to one-sixth of the total number of files it would need to review to fully answer interrogatory number three. Settlements were not itemized in the files by injury. Because all but one of those files, which resulted in a no-cause-of-action jury verdict, included allegations of multiple injuries, State Farm averred that it was impossible to determine accurately how much was paid out for the TMJ injuries. Thus, notwithstanding the fact that at the outset State Farm dramatically overestimated the costs of performing the discovery, State Farm apparently correctly predicted that answering interrogatory three would implicate onerous costs while producing virtually no useful data.

**15.** State Farm asserted that the court's order limiting the scope of discovery to the issue of damages removed any obligation to respond to these questions.

264

Interrogatories three, four, and five require State Farm to divulge information completely unrelated to Walker's liability and the damages Chatterton has suffered. Information about other accidents and other injuries does not assist in determining the degree of Walker's negligence, nor does it provide any useful information about the dollar value of Chatterton's injuries. The disability resulting from an injury is virtually always specific to the individual who has been injured. The level of disability and the costs incurred as a result of that disability depend more upon the health and physical condition of the injured person, as well as the severity and nature of the injury, than upon the specific anatomical location of the injury. To the extent such information about similar injuries is relevant, it can be more profitably provided by medical and economic experts who have devoted their own professional resources to estimating and valuating the losses occasioned by personal injuries.

The interrogatories related to State Farm's internal policies and procedures are also irrelevant to the issues germane to this case. They can produce information related only to Chatterton's hypothetical bad faith claim—a claim he has not made at this time. The remainder of the interrogatories are related to State Farm's processing of Chatterton's claim. None of those interrogatories appears to be specifically directed at eliciting information relating to Walker's liability or Chatterton's damages. Rather, they apparently explore the possibility of a bad faith claim against State Farm based upon State Farm's handling of the claim. To that extent, they are irrelevant and not discoverable. Assuming that disputes remain about State Farm's answers to other interrogatories, we remand to the trial court and direct it to determine whether any of those questions are reasonably designed to obtain information directly relevant to the issues of Walker's liability and the resulting damages.

Reversed and remanded for further proceedings.

ZIMMERMAN, C.J., DURHAM and RUSSON, JJ., and HENRIOD, Judge, concur in Associate Chief Justice STEWART's opinion.

Having disqualified himself, Justice HOWE does not participate herein; District Judge STEPHEN L. HENRIOD sat.