*2005 UT 21*

**Byron Child CHRISTIANSEN
and Merrilee Christiansen,
Plaintiffs and Appellees,**

v.

**FARMERS INSURANCE EXCHANGE,
Defendant and Appellant.**

No. 20030836.

Supreme Court of Utah.

April 8, 2005.

Rehearing Denied June 1, 2005.

Scott D. Brown, Brian S. Coutts, Salt Lake, for plaintiffs.

Andrea C. Alcabes, Barbara L. Maw, Salt Lake, for defendant.

DURHAM, Chief Justice:

¶ 1 Plaintiffs Byron and Merrilee Christiansen (the Christiansens) brought suit against Farmers Insurance Exchange (Farmers), asserting breach of both the express terms of their insurance contract and the implied covenant of good faith and fair dealing. After the breach of express contract claim was sent to arbitration, Farmers filed a motion to stay the bad faith claim and a motion for a protective order to prevent further discovery related to the bad faith claim until after a breach of the express contract was established. The district court denied both motions, holding that the two claims were severable and could therefore be pursued simultaneously. In reviewing Farmers's appeal of these rulings, we hold that the motion to stay is now moot, and we affirm the district court's denial of the protective order.

## BACKGROUND

¶ 2 Byron Christiansen was injured in an automobile accident in May 2001. After receiving the maximum amount recoverable under the adverse driver's insurance policy, the Christiansens filed a claim for benefits with Farmers, invoking the underinsured motorist provision of their policy. In April 2003, after Farmers refused to pay the claim and settlement negotiations failed, the Christiansens brought suit against Farmers, alleging breaches of fiduciary duty,[1] express contract, and the covenant of good faith and fair dealing. In response, Farmers filed a motion to compel arbitration under the arbitration clause of the Christiansens' insurance policy and to stay all claims.

¶ 3 The Christiansens then filed a motion to compel Farmers to respond to certain interrogatories related to their bad faith claim. Farmers filed a counter motion for a protective order, arguing that neither the bad faith claim nor the associated discovery requests could proceed until the Christian-

sens established a breach of the express terms of the insurance contract.[2]

¶ 4 Following oral argument, the district court granted Farmers's motion to compel arbitration of the breach of express contract claim and to stay litigation of that claim. However, the court held that no basis existed under the insurance policy's arbitration clause to compel arbitration of the Christiansens' bad faith claim and therefore denied Farmers's motion to stay litigation of the bad faith claim and its motion for a protective order for discovery related to that claim. The court then granted the Christiansens' motion to compel discovery responses in connection with the bad faith claim. In ruling on these motions, the court reasoned that, although the case law was not entirely clear, it appeared that the two claims were independent of each other and could therefore be pursued simultaneously.

¶ 5 In response to these rulings, Farmers filed a motion for reconsideration, reasserting its argument that the bad faith claim could not be brought until a breach of express insurance contract was established. The district court denied the motion for reconsideration, reiterating its previous holding that claims for breach of express contract and bad faith were independent causes of action that may be pursued simultaneously and that no other basis existed for granting a protective order. Farmers then brought this interlocutory appeal of the district court's denial of its motion to stay and motion for a protective order. After Farmers filed this appeal, the arbitration proceeding addressing the breach of express contract claim concluded.

## ANALYSIS

■ ¶ 6 We first consider the district court's denial of Farmers's motion to stay the Christiansens' bad faith claim pending a resolution of the breach of express contract claim. The Utah Arbitration Act provides

---

1. The breach of fiduciary duty claim was later dismissed pursuant to a joint stipulation by the parties.

2. Although Farmers argues that the bad faith claim should have been stayed pending a show-

ing of both "legal entitlement" and "breach of contract," we see no distinction between these terms in this context and thus refer only to the breach of express contract claim.

that "[a]n order to submit an agreement to arbitration stays any action or proceeding involving an issue subject to arbitration under the agreement. However, if the issue is severable from the other issues in the action or proceeding, only the issue subject to arbitration is stayed." Utah Code Ann. § 78–31a–4(3) (2002) · (current version at Utah Code Ann. § 78–31a–108(7) (2004)). Here, because the breach of express contract claim has now been resolved by arbitration, the question of whether any other issues in the Christiansens' court action should have been stayed is moot, and we decline to address it on appeal. *State v. Sims*, 881 P.2d 840, 841 (Utah 1994) ("An issue on appeal is considered moot when the requested judicial relief cannot affect the rights of the litigants.... When an issue is moot, judicial policy dictates against our rendering an advisory opinion." (internal quotation and · citation omitted)).

■ ¶ 7 We next consider the district court's denial of Farmers's motion for a protective order, which we review under rule 26(c) of the Utah Rules of Civil Procedure for an abuse of discretion. *Spratley v. State Farm Mut. Auto. Ins. Co.*, 2003 UT 39, ¶ 8, 78 P.3d 603. To the extent the denial of the protective order is based on the district court's interpretation of binding case law, we review for correctness. *State v. Leyva*, 951 P.2d 738, 741 (Utah 1997) ("A lower court's interpretation of binding case law presents a question of law which we review for correctness.").

■ ¶ 8 Rule 26(c) of the Utah Rules of Civil Procedure states, in relevant part:

Upon motion by a party or by the person from whom discovery is sought, ... and for good cause shown, the court ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

(c)(1) that the discovery not be had;

(c)(2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place....

Utah R. Civ. P. 26(c)(1)-(2). A "party seeking a protective order has the burden of showing that good cause exists for issuance of that order." *Carter v. Utah Power & Light Co.*, 800 P.2d 1095, 1099 (Utah 1990).

■ ¶ 9 Here, Farmers appears to base its assertion that good cause for a protective order exists on its argument that an insured must establish a breach of the express terms of an insurance contract prior to bringing a first-party bad faith claim, and that, as a result, no discovery is permissible concerning the Christiansens' bad faith claim until this breach of ·express contract is established. In support of this argument, Farmers relies primarily on our decision in *Chatterton v. Walker*, 938 P.2d 255 (Utah 1997). In that case, an insured presented a claim for breach of the express terms of an insurance contract, but made no allegations of bad faith. *Id.* at 263. However, in pursuing the breach of express contract claim, the insured "propounded extensive discovery that he ... conceded [was] primarily directed at exploring the possibility of pursuing a bad faith claim." *Id.* We held that the discovery was irrelevant to the insured's breach of express contract claim and was thus inappropriate where it was sought only to explore the possibility of filing a bad faith claim. *Id.* at 263–64. In contrast, in this case, the Christiansens' discovery requests were made in ongoing litigation of their bad faith claim, and no issues of relevancy have been raised. *Chatterton* is therefore inapposite.

■ ¶ 10 We conclude that the district court was correct in allowing the Christiansens to proceed with discovery related to their bad faith claim. Farmers has failed to demonstrate good cause for a protective order because the claims of breach of express contract and bad faith are premised on distinct duties that give rise to divergent and severable causes of action. A breach of express contract claim arises out of the express terms of the contract, and the breach is proven in relation to those terms. *See Fairbourn Commercial, Inc. v. Am. Hous. Partners, Inc.*, 2004 UT 54, ¶ 11, 94 P.3d 292 (relying on a contract's express terms to determine the intent of the parties). A claim for breach of the implied covenant of good

faith and fair dealing, by contrast, is based on judicially recognized duties not found within the four corners of the contract. *See Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 798 (Utah 1985). These duties, unlike the duties expressly stated in the contract, are not subject to alteration by the parties. They exist whenever a contract is entered, *see id.*, and are imposed on the parties "consistent with the agreed common purpose" of the contract, *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 200 (Utah 1991).

¶ 11 Although the covenant of good faith and fair dealing inheres in all contracts, we have recognized that in the first-party insurance context, the covenant imposes upon the parties a specific duty to bargain or settle in good faith. *Beck*, 701 P.2d at 798. In *Beck*, we stated:

> [T]he implied obligation of good faith performance contemplates, at the very least, that the insurer will diligently investigate the facts to enable it to determine whether a claim is valid, will fairly evaluate the claim, and will thereafter act promptly and reasonably in rejecting or settling the claim. The duty of good faith also requires the insurer to deal with laymen as laymen and not as experts in the subtleties of law and underwriting and to refrain from actions that will injure the insured's ability to obtain the benefits of the contract. These performances are the essence of what the insured has bargained and paid for, and the insurer has the obligation to perform them.

*Id.* at 801 (internal quotation and citation omitted).

¶ 12 In *Beck*, the defendant argued, as does Farmers in this case, that a first-party bad faith claim should be allowed only where some additional showing is made. *Id.* at 798. However, in that case we declined to limit the remedy for bad faith, holding that "the refusal to bargain or settle, standing alone, may, under appropriate circumstances, be sufficient to prove a breach." *Id.* We reasoned that:

> An insured who has suffered a loss and is pressed financially is at a marked disadvantage when bargaining with an insurer over payment for that loss. Failure to accept a proffered settlement, although less than fair, can lead to catastrophic consequences for an insured who, as a direct consequence of the loss, may be peculiarly vulnerable, both economically and emotionally. The temptation for an insurer to delay settlement while pressures build on the insured is great, especially if the insurer's exposure cannot exceed the policy limits.

*Id.*

¶ 13 Despite this, Farmers urges us to hold that a breach of the express terms of an insurance contract must be shown before an insured may proceed with discovery in a bad faith claim. The result of such a holding, however, would be to leave an insured who is ultimately found not to be entitled to payment under the contract, but with whom the insurer refused to bargain and to settle in good faith, without recourse for the breach of the implied covenant of good faith and fair dealing. Such a result is contrary to *Beck*, where we held that the obligations to bargain or settle in good faith "are the essence of what the insured has bargained and paid for." *Id.* at 801. If we were to condition discovery in litigation of a bad faith claim on violation of the express terms of the contract, the insurer could escape liability for its failure to honor the good faith duty to bargain or settle with its insured by ultimately paying the claim, regardless of any wrongful delays or obstructions that may have occurred in the process. We decline to overturn our reasoning in *Beck* by adopting this approach. We therefore hold that Farmers has failed to demonstrate good cause justifying its request for a protective order.

## CONCLUSION

¶ 14 We hold that because arbitration of the Christiansens' breach of express contract claim is now finished, Farmers's request to stay the Christiansens' bad faith litigation claim pending the arbitration's outcome is moot. With regard to Farmers's motion for a protective order, we hold that a showing of breach of express contract is not a condition precedent to an insured seeking

discovery in connection with his ongoing litigation of a bad faith claim. We therefore affirm the district court's denial of Farmers's motion for a protective order and remand for proceedings consistent with this opinion.

¶ 15 Associate Chief Justice WILKINS, Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Chief Justice DURHAM's opinion.