**2022 UT 21**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

UMIA INSURANCE, INC.,
*Appellant / Cross-Appellee,*

*v.*

RENATO SALTZ, M.D. and SALTZ PLASTIC SURGERY, P.C.,
*Appellees / Cross-Appellants.*

No. 20200008
Heard: October 18, 2021
Filed June 9, 2022

On Direct Appeal

Third District, Salt Lake
The Honorable Keith A. Kelly
No. 160907287

Attorneys:

Troy L. Booher, Beth E. Kennedy, Taylor P. Webb, Salt Lake City,
Mark D. Malloy, Steven L. Miracle, Milwaukee,
for appellant / cross-appellee

Julianne P. Blanch, Alan S. Mouritsen, Salt Lake City,
for appellees / cross-appellants

ASSOCIATE CHIEF JUSTICE LEE authored the opinion of the Court in
which CHIEF JUSTICE DURRANT, JUSTICE PEARCE, JUSTICE HAGEN*,
and JUDGE POHLMAN joined.

Due to his retirement, JUSTICE HIMONAS did not participate herein;
JUSTICE DIANA HAGEN sat.

Having recused herself, JUSTICE PETERSEN does not participate herein;
COURT OF APPEALS JUDGE JILL POHLMAN sat.

---

* JUSTICE DIANA HAGEN became a member of the Court on May
18, 2022, but sat as a visiting judge prior to her confirmation.

Associate Chief Justice Lee, opinion of the Court:

¶1 Renato Saltz is a plastic and reconstructive surgeon who was sued by a former patient for releasing her pre- and post-surgery photographs to a news outlet. Saltz turned over his legal defense to his malpractice insurance provider, UMIA Insurance, Inc. UMIA initially defended Saltz but eventually filed its own declaratory judgment suit, claiming that Saltz lacked insurance coverage for the former patient's claims. Saltz countersued. He claimed he had coverage under the plain language of his UMIA policy and under principles of waiver and promissory estoppel. He also sought compensatory and punitive damages under a claim that UMIA had breached its duty of good faith.

¶2 The district court found that Saltz was not covered under the plain language of the policy and dismissed his claim for waiver and his request for punitive damages. But it denied UMIA's motion for judgment as a matter of law and allowed Saltz's promissory estoppel and breach of the duty of good faith claims to go to a jury. Over UMIA's objections, the court also allowed evidence from a settlement negotiation to be presented to the jury. The jury found for Saltz on both claims.

¶3 We affirm in part, reverse in part, and remand for further proceedings on Saltz's requests for punitive damages and for attorney fees incurred on appeal. The district court properly allowed Saltz's claims for promissory estoppel and breach of the duty of good faith to go to the jury, and the court was correct to deny UMIA's motion for a new trial on the claim for breach of the duty of good faith. As for UMIA's assertion that the district court improperly admitted evidence from the 2017 settlement talks, we affirm the district court on the ground that UMIA failed to carry its burden of persuasion on appeal. The district court erred, however, in dismissing Saltz's claim for waiver and request for punitive damages. Because Saltz successfully established that he was covered under his UMIA policy by promissory estoppel, we do not reach the question of whether Saltz has a viable waiver claim or was covered under the plain language of the policy.

I

¶4 Dr. Renato Saltz has practiced plastic and reconstructive surgery in Utah for thirty years.[1] UMIA Insurance provided Dr. Saltz a $1,000,000 malpractice insurance policy. At various times, news outlets featured stories highlighting Dr. Saltz's work and opinions on plastic surgery. And these interactions between Saltz and the press are what ultimately led to the case before us.

¶5 In 2006, Saltz performed an abdominoplasty on Conilyn Judge. As part of that procedure, Judge gave written consent for a nurse to take nude pictures of her before and after the operation. This was standard practice in the plastic surgery field.

¶6 A year after the procedure, a local Fox News affiliate interviewed both Saltz and Judge for a story on plastic surgery. After the interviews, but before the broadcast, Fox requested some before and after photos of Judge. And without her consent, Saltz gave Fox unredacted photos of Judge—without any instructions on how the photos should be displayed in the broadcast. Fox then aired edited photos in the beginning of 2008, showing Judge's body from her neck to her upper thigh, with black bars placed over her breasts and groin.

¶7 A month later, Saltz received a letter from Judge's attorney complaining about the release of the photos to Fox. And in early 2009, Judge filed a civil suit against both Fox and Saltz, asserting various tort claims and seeking millions of dollars in damages (the "Judge Lawsuit").

¶8 After receiving Judge's initial letter, Saltz contacted Mike Imbler, a claim consultant at UMIA who had worked with Saltz for over five years. Imbler retained the law firm Richards Brandt Miller Nelson ("RBMN") to represent Saltz. A few months later, RBMN contacted Saltz and advised him to ask Hartford—his general liability insurance carrier—if it would cover the Judge Lawsuit. Hartford denied coverage. Satisfied with his coverage under his UMIA policy, Saltz did not challenge Hartford's denial.

¶9 UMIA controlled how the Judge Lawsuit was handled and negotiated. During the first two years of the case, UMIA

---

[1] "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly." *USA Power, LLC v. PacifiCorp*, 2016 UT 20, ¶ 8 n.3, 372 P.3d 629 (citation and internal quotation marks omitted).

unsuccessfully offered Judge $50,000 to drop her claims, and Fox settled separately for $300,000. After the Fox settlement, Judge and Saltz went into mediation. UMIA controlled the mediations, authorizing RBMN to offer up to $150,000 to settle. But mediation was unsuccessful and litigation resumed. Judge was willing to accept an $800,000 settlement offer, but UMIA offered only $100,000.

¶10 RBMN filed a motion for summary judgment, asserting that Judge had consented to the photo release when she signed a pre-operation consent form. That motion was granted. And UMIA then instructed RBMN to withdraw the $100,000 settlement offer. In response, Judge appealed the district court's grant of summary judgment.

¶11 The parties litigated that appeal for the next five years. During that time, settlement discussions were suspended. This appellate process culminated in our decision in *Judge v. Saltz Plastic Surgery, P.C.*, 2016 UT 7, 367 P.3d 1006, where we reversed the district court's dismissal and remanded the case for further proceedings. The case returned to the district court in 2016.

¶12 After the case returned to the district court, Judge offered to settle for $1,000,000. RBMN counseled Saltz to consider obtaining independent counsel. And he did so—retaining Parsons, Behle & Latimer ("PBL") to represent him personally. A week later, PBL asked UMIA to either settle the Judge Lawsuit for the full $1,000,000 of coverage or indemnify Saltz for any damages that might be awarded in the suit. After receiving the request, Nick Ghiselli, UMIA's general counsel, reviewed the Judge Lawsuit and raised, for the first time, the possibility that the Judge Lawsuit was not covered under Saltz's policy. Ghiselli doubted that Judge's claims were "covered by the UMIA policy," but recognized that "[i]t might be too late" for UMIA to deny coverage under the principles of promissory estoppel and waiver.

¶13 Upon this discovery, UMIA informed Saltz that it would not settle the Judge Lawsuit for policy limits, that it did not think Saltz had coverage under his UMIA policy, and that Saltz should ask Hartford to revisit its initial coverage denial. At the same time, UMIA responded to Judge's demand by offering her $200,000 to settle the case. Judge refused. PBL then sent UMIA a follow-up letter expressing concern with its sudden about-face. Ghiselli responded by characterizing the letter as containing unwarranted "threats," especially in light of UMIA's recent settlement offer. Two weeks later, UMIA sent a letter to Saltz that asserted that the Judge Lawsuit

was not covered under his policy but agreeing to defend Saltz under a reservation of rights.[2]

¶14 Saltz's relationship with UMIA deteriorated in the wake of these events. In November 2016, UMIA filed the lawsuit that is the genesis of this appeal—a declaratory judgment action seeking to establish that the Judge Lawsuit was not covered under Saltz's insurance policy with UMIA. Saltz disputed UMIA's denial of coverage under the plain language of the policy. And he asserted several counterclaims against UMIA, contending in the alternative that he had coverage under the policy through principles of waiver and promissory estoppel. Saltz also claimed that UMIA had breached the covenant of good faith and fair dealing—a claim on which Saltz sought compensatory and punitive damages. At Saltz's request, Hartford also revisited its initial coverage denial. It agreed to defend Saltz under a reservation of rights and to contribute half of his defense costs incurred thus far.

¶15 Several weeks later, UMIA moved for summary judgment on its declaratory judgment claim, asserting that the Judge Lawsuit was not covered under the plain language of its policy with Saltz. The district court agreed, leaving only Saltz's counterclaims for breach of the duty of good faith and associated damages and his claims for coverage under the UMIA policy under theories of waiver and promissory estoppel.

¶16 The parties entered into settlement negotiations over both cases in June 2017. Hartford, UMIA, and Saltz all agreed to contribute toward a settlement offer in the Judge Lawsuit. Hartford offered $200,000, and Saltz offered $35,000. UMIA offered only $15,000—less than ten percent of its previous offer and its lowest since the Judge Lawsuit began. Judge rejected the offer. Hartford then increased its contribution to $400,000, bringing the total offer up to $450,000. UMIA informed the mediator that it would not offer more than $15,000 in any settlement offer, and Saltz stated that he would continue to pursue his claim for breach of the duty of good faith against UMIA. After UMIA left the negotiations, Hartford and

---

[2] A reservation of rights letter "explains the insurer's coverage position. [It] inform[s] the insured in detail . . . of every reason for the insurer's position concerning the possible disclaimer of coverage." 1 JUDITH F. GOODMAN & SUE C. JACOBS, LAW AND PRACTICE OF INSURANCE COVERAGE LITIGATION § 8:2 (2021).

Saltz settled the Judge Lawsuit for $1,000,000 in total, each contributing $500,000.

¶17 The suit between UMIA and Saltz continued, with both parties filing various pretrial motions. UMIA attempted to preclude Saltz from introducing evidence of its actions during the June 2017 settlement talks, asserting that the evidence was barred by Rule 408 of the Utah Rules of Evidence. The district court denied the motion. It held that UMIA had opened the door to the evidence when it admitted evidence from various other settlement mediations with Judge. The district court ruled in UMIA's favor, however, on its motion for summary judgment, dismissing Saltz's request for punitive damages under his claim for breach of the duty of good faith. In so doing, the district court found that UMIA's conduct did "not rise to the level of willful and malicious misconduct" or "knowing and reckless indifference toward or disregard of" Saltz's rights. Saltz's claims for promissory estoppel, waiver, and breach of the duty of good faith remained.

¶18 The case went to trial in August 2019. After Saltz presented his case in chief, UMIA moved for a judgment as a matter of law, asserting that Saltz had failed to establish a basis for promissory estoppel, breach of the duty of good faith, or waiver. Regarding promissory estoppel, UMIA contended that Saltz had failed to demonstrate that he was prejudiced by UMIA's eight-year delay in questioning coverage. With respect to breach of the duty of good faith, UMIA asserted that Saltz had not presented any evidence to support the claim. The district court allowed Saltz's claims for promissory estoppel and breach of the duty of good faith to go to the jury, but dismissed his waiver claim, holding that waiver did not apply in the context of third-party insurance.[3]

¶19 The jury found for Saltz on both claims. It found that UMIA was estopped from denying coverage and had to reimburse Saltz the full $500,000 payment he made to Judge during the June 2017

---

[3] Third-party insurance coverage refers to an agreement where "the insurer contracts to defend the insured against claims made by third parties against the insured and to pay any resulting liability, up to the specified dollar limit." *Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 798 n.2 (Utah 1985). This is in contrast to first-party insurance coverage, which refers to "an insurance agreement where the insurer agrees to pay claims submitted to it by the insured for losses suffered by the insured." *Id.*

settlement talks. It also found that UMIA had breached the covenant of good faith and fair dealing, causing Saltz $500,000 in damages and causing him to incur attorney fees.

¶20 After the jury verdict, UMIA renewed its motion for judgment as a matter of law.[4] UMIA raised the same basic objections to Saltz's claims for promissory estoppel and breach of the duty of good faith that it raised on its first motion for judgment as a matter of law. The district court denied UMIA's motion and confirmed the jury's award.

¶21 UMIA filed this appeal, and Saltz cross appealed.

II

¶22 UMIA challenges the denial of its renewed motion for judgment as a matter of law on Saltz's claims for promissory estoppel and breach of the duty of good faith. UMIA also asks us to order a new trial on claims for breach of the duty of good faith if we do not overrule the district court's decision on the motion. Finally, UMIA asks for a new trial on the ground that it was prejudiced by the district court's improper admission of evidence of UMIA's actions during the 2017 settlement talks.

¶23 On his cross appeal, Saltz challenges the district court's dismissal of his waiver claim and request for punitive damages. He also asks us to reverse the determination that the Judge Lawsuit was not covered under the plain language of the UMIA insurance policy. And Saltz seeks an award of his attorney fees incurred on appeal.

¶24 We affirm the district court's denial of UMIA's renewed motion for judgment as a matter of law on Saltz's promissory estoppel claim. But we reverse the dismissal of Saltz's claim for waiver. We also affirm the determination that UMIA was not

---

[4] Effective May 2016, Utah Rule of Civil Procedure 50 was amended to change the terms "judgment notwithstanding the verdict" and "directed verdict" to "judgment as a matter of law." *See Arnold v. Grigsby*, 2018 UT 14, ¶ 10 n.2, 417 P.3d 606. But this change in terminology did not alter the governing standard. UTAH R. CIV. P. 50 advisory committee's notes to 2016 amendment. We generally follow the terminology of the amended rule in this opinion— speaking of "judgment as a matter of law" and employing the terms "judgment notwithstanding the verdict" and "directed verdict" only where these terms appear in motion titles, court order titles, and case law.

entitled to judgment as a matter of law on Saltz's claim for breach of the duty of good faith. And we likewise affirm the denial of UMIA's request for a new trial on the same claim for breach of the duty of good faith. As for UMIA's assertion that the district court improperly admitted evidence from the 2017 settlement talks, we affirm on the ground that UMIA failed to carry its burden of persuasion on appeal. But we reverse the dismissal of Saltz's request for punitive damages and conclude that Saltz is entitled to an award of his attorney fees on appeal.

## A. Promissory Estoppel

¶25 UMIA filed a renewed motion for judgment as a matter of law on Saltz's promissory estoppel claim, asserting that Saltz failed to establish that he was prejudiced by UMIA's delay in questioning coverage.[5] The district court denied the motion. It held that there was "evidence from which the jury could determine that there was prejudice [to Saltz]." UMIA challenges that denial on appeal.

¶26 We review a denial of a motion for judgment as a matter of law "for correctness." *Mounteer Enters., Inc. v. Homeowners Ass'n for the Colony at White Pine Canyon*, 2018 UT 23, ¶ 13, 422 P.3d 809 (citation omitted) (using the nomenclature of "judgment notwithstanding the verdict"). And we overturn such a decision "only if the appellant can demonstrate that there was no basis in the evidence, including reasonable inferences which could be drawn therefrom, to support the jury's verdict." *USA Power, LLC v. PacifiCorp*, 2016 UT 20, ¶ 29, 372 P.3d 629 (citation omitted) (using the nomenclature of "judgment notwithstanding the verdict"). As applied here, this standard requires UMIA to establish that Saltz failed to put on evidence that UMIA's delay resulted in prejudice to Saltz. And we affirm on the ground that UMIA has failed to carry that burden.

¶27 Under the majority rule among state courts, if a breach of a duty has been shown, prejudice to the insured is "conclusively

---

[5] Generally, "estoppel cannot be used to create [insurance] coverage." 7 STEVEN PLITT ET AL., COUCH ON INSURANCE § 101:9 (3d. ed. 2021). Courts have recognized "several exceptions" to this rule. *Id.* But they are triggered only where "there is prejudice to the insured from the insurer's actions," as where "[t]he insurer unreasonably delays in informing interested parties that it may disclaim coverage." *Id.*

presumed" once a "[third-party] insurer, without reservation of rights . . . [,] assumes the exclusive control of the defense of claims against the insured."[6] This rule is based on the notion that "the loss to an insured of the right to manage and control an action against him, as a consequence of the insurer's defense of such action" is so severe that prejudice can be presumed. R.D. Hursh, Annotation, *Liability Insurance: Insurer's Assumption of or Continuation in Defense of Action Brought Against the Assured as Waiver or Estoppel as Regards Defense of Noncoverage or Other Defense Existing at Time of Accident*, 38 A.L.R. 2d 1148 § 5[b] (1954); *see also id.* § 2.

¶28 Other courts reject a presumption of prejudice—holding that the assumption of an insured's defense is not in and of itself sufficient to establish prejudice. Prejudice, under this rule, is a question of fact to be resolved in light of evidence presented by the parties. *World Harvest Church, Inc. v. GuideOne Mut. Ins. Co.*, 695 S.E.2d 6, 11 (Ga. 2010) (explaining the difference between the majority and the minority rules regarding prejudice in the context of third-party insurance); *see also* 38 A.L.R. 2d 1148 § 5[c] (1954).

¶29 This court and a handful of others have taken a different approach. We have endorsed a presumption of prejudice, but only in cases where the insurer "assumes the defense of an action or claim . . . and conducts the action to final judgment, or the claim to settlement." *State Farm Mut. Auto Ins. Co. v. Kay*, 487 P.2d 852, 855 (Utah 1971) (quoting with approval *Boulet v. Millers Mut. Ins. Ass'n of Ill.*, 362 F.2d 619, 622–23 (8th Cir. 1966)), *overruled on other grounds by Farmers Ins. Exch. v. Call*, 712 P.2d 231 (Utah 1985). When "the insurer disclaims and withdraws prior to final judgment or settlement, prejudice to the insured is not presumed," and the insured must prove that he "was actually prejudiced" by the delay. *Kay*, 487 P.2d at 855. In other words, under our law, prejudice is not

---

[6] *World Harvest Church, Inc. v. GuideOne Mut. Ins. Co.*, 695 S.E.2d 6, 11 (Ga. 2010) (citations omitted) (quoting *Arceneaux v. Amstar Corp.*, 969 So.2d 755, 767 (La. Ct. App. 2007)) (adopting this general rule and recognizing a variant in which prejudice is shown "without resort to a presumption" and "without any further proof") (citing 14 LEE R. RUSS, COUCH ON INSURANCE §§ 202:67–202:69 (3rd ed.); R.D. Hursh, Annotation, *Liability Insurance: Insurer's Assumption of or Continuation in Defense of Action Brought Against the Assured as Waiver or Estoppel as Regards Defense of Noncoverage or Other Defense Existing at Time of Accident*, 38 A.L.R. 2d 1148 § 5[b] (1954)).

presumed from mere relinquishment of control of the defense to the insurer, or from a disclaimer or withdrawal of coverage prior to final judgment or settlement. Until the insurer either settles the suit or litigates it to final judgment, the insured bears the burden of establishing prejudice.

¶30 In *Kay*, we recognized that an "insurer is entitled to a reasonable time to investigate the facts" but held that it is required to "act seasonably in disclaiming liability . . . and . . . cannot delay its decision so long that the insured's rights are prejudiced thereby." *Id.* Ultimately, we identified two ways that an insured could establish prejudice arising from an insurer's delay in questioning coverage. First, we noted that prejudice may be shown by proof that the insured was deprived of "an opportunity to prepare an adequate defense before trial." *Id.* at 856. Second, we explained that prejudice may be established by evidence that the insured was deprived of "an opportunity . . . to effect a settlement." *Id.*

¶31 We affirm on the ground that Saltz presented evidence that he was prejudiced under the standard set forth in *Kay*. Saltz elicited expert testimony showing that UMIA's delay in questioning coverage deprived him of an opportunity to settle the Judge Lawsuit. Saltz's expert testified that UMIA missed opportunities to settle during its eight-year delay in questioning coverage. The expert asserted that there would have been better settlement opportunities if UMIA had been more collaborative with Fox in 2011 when Fox settled. If UMIA had "been on the inside" of that settlement, it would have been "a collective offer," which is "far more appealing to an injured party" because the whole issue gets resolved at once. In the expert's opinion, UMIA missed another opportunity to settle when it withdrew its $100,000 offer right after Judge's claim was dismissed on summary judgment in 2011. The expert believed that UMIA did this because it "feared that Ms. Judge would accept that offer."

¶32 The expert also testified that when an insurer questions coverage early on in the litigation, the plaintiff's incentives are altered. In the expert's opinion, questioning coverage early increases the time to compensation for a successful plaintiff by as much as eight to ten years. A plaintiff may want to avoid waiting to be compensated while the insured and insurer dispute coverage. And both plaintiffs and their attorneys "ha[ve] to incur expense and additional attorney[] fees fighting [for] coverage" for the insured because their recovery and compensation, respectively, depends on the outcome of the insurer's declaratory judgment suit. Plaintiffs

may also choose to avoid publicity about their claim as the discovery (and possible appellate) processes driven by a third-party insurer unfold—because "the more it's advertised, the more it hurts [the plaintiff]." These incentives "motivate[]" plaintiffs, increasing the likelihood of settlements occurring "early and for less money."

¶33 UMIA did not question coverage until after eight years of litigation. As the case was close to resolution, Judge knew she would be compensated soon if she won her case. The discovery and appellate processes had concluded, meaning that Judge had already been subject to public exposure. If UMIA had sent a reservation of rights letter and filed for declaratory judgment action earlier, it "would have changed [things] significantly," because Judge would have had incentives to settle. Indeed, in the expert's opinion, Judge would have been "highly motivated" to settle.

¶34 This testimony shows that UMIA deprived Saltz of settlement opportunities with Judge through its delay in questioning coverage. This is sufficient under *Kay*, which holds that prejudice can be established by proof that an insured was deprived of "an *opportunity* . . . to effect a settlement." *Id.* (emphasis added). And a reasonable jury could have found that UMIA deprived Saltz of an opportunity to settle the Judge Lawsuit.[7]

## B. Waiver

¶35 The district court dismissed Saltz's waiver claim based on its understanding of our decision in *Kay*. It concluded that *Kay* requires an insured to show that he was prejudiced by an insurer's delay in reserving its rights to obtain coverage under an insurance policy. And it effectively concluded that a waiver claim is not available in the third-party insurance context.

---

[7] UMIA rightly notes that Saltz did not present evidence of the settlement amount that Judge might have accepted before UMIA contested coverage. Certainly Saltz could have done so. And perhaps such evidence would have affected the jury's assessment of the prejudice element of Saltz's promissory estoppel claim. But that is not the question presented for our review. We are not asked to decide whether the jury was presented with the best or most direct evidence of prejudice. We are asked only to decide whether Saltz presented some evidence on which the jury could have based its determination of prejudice. We conclude that Saltz carried this burden under *Kay*, and we affirm the district court on that basis.

¶36 This decision hinged on a conclusion of law. We accordingly review it for correctness, affording no deference to the district court's analysis. *See State v. Daniels*, 2002 UT 2, ¶ 18, 40 P.3d 611.

¶37 Our decision in *Kay* was not as sweeping as the district court surmised. In *Kay*, we agreed with the Eighth Circuit that "[p]rejudice . . . is an essential element in . . . estoppel." *Kay*, 487 P.2d at 855. But we said nothing about whether waiver was a viable claim against a third-party insurer. And we did not require proof of prejudice as an element of a claim for waiver.

¶38 Our more recent case law makes clear that "[p]rejudice is irrelevant to a claim of waiver." *Mounteer Enters., Inc.*, 2018 UT 23, ¶ 33 (citation omitted). Waiver is a deeply embedded principle of contract law. It requires only "a showing of words or conduct manifesting the 'intentional relinquishment of a known right.'" *Id.* (citing *Wilson v. IHC Hosps., Inc.*, 2012 UT 43, ¶ 61, 289 P.3d 369). And we see no principled reason why this doctrine should not extend to the third-party insurance context.

¶39 We hold that waiver is a valid claim in the third-party insurance context and affirm that such a claim may be established without proof of prejudice. But we need not consider whether the elements of waiver were established here, or remand for further proceedings on that question, since Saltz successfully established coverage under the doctrine of promissory estoppel.

## C. Breach of the Duty of Good Faith

¶40 After the jury entered its verdict, UMIA renewed its motion for judgment as a matter of law on Saltz's claim for breach of the duty of good faith, contending that Saltz had failed to present evidence to support this claim. Alternatively, it requested a new trial, asserting error in the jury instructions. The district court denied both motions.

¶41 As noted above, we review a denial of a motion for a judgment as a matter of law "for correctness." *Mounteer Enters., Inc.*, 2018 UT 23, ¶ 13 (citation omitted). We will reverse the denial of such a motion "only if the appellant can demonstrate that there was no basis in the evidence, including reasonable inferences which could be drawn therefrom, to support the jury's verdict." *USA Power, LLC v. PacifiCorp*, 2016 UT 20, ¶ 29 (citation omitted).

¶42 We review a decision to grant or deny a new trial under an abuse of discretion standard. *Id.* ¶ 30. In so doing, "[w]e review the legal standards applied by the [district] court . . . for correctness."

*State v. Bess*, 2019 UT 70, ¶ 17, 473 P.3d 157 (first and second alterations in original) (citation and internal quotation marks omitted). We will reverse and remand for a new trial if the district court made a legal error serious enough that "the likelihood of a different outcome is sufficiently high to undermine [our] confidence in the verdict." *SIRQ, Inc. v. The Layton Cos.*, 2016 UT 30, ¶ 32, 379 P.3d 1237 (alteration in original) (internal quotation marks omitted) (citing *State v. Knight*, 734 P.2d 913, 920 (Utah 1987)).

¶43 We affirm the district court's denial of UMIA's motion for judgment as a matter of law. Saltz presented evidence of UMIA's actions from which the jury could infer that the insurer breached its duty of good faith. We likewise conclude that there is not a sufficient basis to overrule the denial of UMIA's new trial motion. Although there were errors in the jury instructions, those errors do not "undermine [our] confidence in the verdict." *SIRQ, Inc.*, 2016 UT 30, ¶ 32 (alteration in original) (citation omitted).

### 1. Evidence of UMIA's Breach of the Duty of Good Faith

¶44 As a third-party insurer, UMIA had a fiduciary responsibility to "act in good faith and be as zealous in protecting the interests of its insured as it would in looking after its own." *Ammerman v. Farmers Ins. Exch.*, 430 P.2d 576, 579 (Utah 1967) (citations omitted); *see id.* at 578 (holding that "[t]he covenant in [an insurance] policy requiring the insurer to defend the insured imposes upon it a fiduciary responsibility"). Third-party insurers are subject to a heightened duty because "the insurer controls the disposition of claims against its insured" and "[t]he insured is wholly dependent upon the insurer to see that, in dealing with claims by third parties, the insured's best interests are protected."[8] *Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 799 (Utah 1985). A failure to uphold this duty constitutes bad faith. *See id.* at 799–800.

---

[8] The relationship between the insurer and its insured is "fundamentally different" for third-party and first-party insurers. *Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 799 (Utah 1985) (citing *Lyon v. Hartford Accident & Indem. Co.*, 480 P.2d 739, 745 (Utah 1971)). "[T]he insured and the insurer are, in effect and practically speaking, adversaries" in the first-party context. *Beck*, 701 P.2d at 799 (quoting *Lyon*, 480 P.2d at 745). In the first-party context, the insurer's duty of good faith is entirely based on the contract between the insurer and the insured. *Beck*, 701 P.2d at 800. First-party insurers do not have a fiduciary duty toward the insured. *Id.* at 799-800.

¶45 Our case law sets forth a number of specific duties that are inherent in the duty to act in good faith. Among those obligations are duties to: act "promptly and reasonably" in accepting or rejecting the insured's claim for coverage, defend the insured, "diligently investigate" the claims against the insured, "fairly and reasonably" evaluate the claims against the insured, and "fairly and reasonably" settle the claims against the insured. *U.S. Fidelity v. U.S. Sports Specialty*, 2012 UT 3, ¶ 20, 270 P.3d 464; *Kay*, 487 P.2d at 855; *Black v. Allstate Ins. Co.*, 2004 UT 66, ¶ 20, 100 P.3d 1163. Saltz presented evidence suggesting that UMIA fell short on several of these grounds.

¶46 The first category of evidence went to the requirement that insurers act "promptly and reasonably" in accepting or rejecting an insured's claim of coverage. *U.S. Fidelity*, 2012 UT 3, ¶ 20. UMIA and Saltz both agreed that UMIA delayed eight years in questioning Saltz's coverage. And evidence of such delay is a sufficient basis for a jury to conclude that UMIA neglected to act "promptly and reasonably" in accepting or rejecting Saltz's claim of coverage. *See id.*

¶47 The second category of evidence went to the duty to "fairly and reasonably" settle claims against the insured. *Black*, 2004 UT 66, ¶ 20. Our court of appeals has said that an insurer has "a duty to accept an offer of settlement within the policy limits when there is a substantial likelihood of a judgment being rendered against the insured in excess of those limits." *Campbell v. State Farm Mut. Auto. Ins. Co.*, 840 P.2d 130, 138 (Utah Ct. App. 1992) (citation omitted). And we agree. An insurer's duty of good faith does not require the insurer to ignore its own interests in defense of the insured. *See Ammerman*, 430 P.2d at 579 (stating that an insurer is not required "to accept any offer below the policy limits, regardless of circumstances, and however questionable the issues of liability and damage may be"). But an insurer cannot "gamble with or sacrifice the insured's interest simply to protect itself." *Id.* Attempting to balance these two considerations, we hold that an insurer has a duty to accept a settlement offer at or below policy limits if there is a substantial likelihood of an excess verdict.

¶48 Saltz presented sufficient evidence that UMIA breached the duty to settle under these standards. Saltz's UMIA policy had a coverage limit of $1,000,000, and Judge made several offers within those limits. *Supra* ¶¶ 4, 9, 12. Yet UMIA refused all of Judge's settlement offers. At trial, Saltz presented evidence that could support a jury verdict that UMIA did so in bad faith. An RBMN attorney testified that there was "a potential" for "an excess verdict"

and stated that he "told UMIA on multiple occasions before the June 2017 mediation that [he was] concerned about a verdict in excess of policy limits." The RBMN attorney also expressed the opinion that there was a "pretty good chance" the jury "would be incensed and inflamed" on Judge's behalf. And this made him "concerned that it could result in a very large verdict [for Judge]." This is a sufficient basis for the jury to find that UMIA failed to "fairly and reasonably" settle the claims against Saltz. *See Black*, 2004 UT 66, ¶ 20.

¶49 Either of these grounds alone would be adequate to affirm the jury's verdict. Together they are more than sufficient. We affirm the denial of UMIA's motion on that basis.

2. Jury Instructions on Breach of the Duty of Good Faith

¶50 As discussed above, an insurer must fulfill specific obligations to satisfy its duty to act in good faith toward the insured: a duty to act "promptly and reasonably" in accepting or rejecting the insured's claim for coverage; a duty to defend; a duty to "diligently investigate" the claims against the insured; a duty to "fairly and reasonably" evaluate the claims; and a duty to "fairly and reasonably" settle those claims. *Supra* ¶ 45. The jury instructions on good faith were based on these duties.

¶51 UMIA claims that there was error in all six of the jury instructions on good faith. The instructions state:

> 1. The insurer will diligently investigate the facts to enable it to determine whether the insured's claim is covered under the policy.
>
> 2. The insurer will fairly evaluate the insured's claim.
>
> 3. The insurer will thereafter act promptly and reasonably in either rejecting or finding the policy covers the insured's claim, which includes the duty to act reasonably in reserving its rights.
>
> 4. The insurer will not retaliate against the insured for exercising his or her rights under the law.
>
> 5. The insurer will settle the case against its insured when it receives a settlement offer within policy limits if there is a substantial likelihood of judgment in excess of policy limits.
>
> 6. The insurer will guard the best interests of the insured as zealously as it would its own, meaning that

the insurer cannot gamble with or sacrifice the insured's interest simply to protect itself.

¶52 UMIA raises various objections to these instructions. It asserts that the first four set out duties that apply to first-party (not third-party) insurers and contends that the fifth instruction improperly defines the duty to settle. UMIA also objects to the sixth instruction, contending that it does not articulate a separate duty but is simply a general restatement of the duty of good faith.

¶53 We conclude that instructions one and two were erroneous in stating that UMIA had a duty to "diligently investigate" and "fairly evaluate" the "insured's claim." These are duties of first-party, not third-party insurers.[9] A third-party insurer's duties are related to "the disposition of claims [by third parties] against its insured." *Beck*, 701 P.2d at 799; *supra* ¶ 18 n.3. The instructions should have said that UMIA needed to "diligently investigate" and "fairly evaluate" the "*claims against the insured.*" *See supra* ¶ 51. The instructions, as given, were accordingly in error.

¶54 We nonetheless affirm because the errors in these instructions were minor and technical and were unlikely to have affected the jury's verdict. We reach that conclusion for two reasons.

¶55 First, in this case, investigating and evaluating "the insured's claim" is effectively the same as investigation and evaluating the "claims against the insured." Saltz's claim was that the Judge Lawsuit was covered by his insurance. So diligently investigating and fairly evaluating Saltz's claim for coverage necessarily involves diligently investigating and fairly evaluating Judge's claims against Saltz (the "claims against the insured").

¶56 Second, most of the evidence Saltz presented at trial centered on other obligations owed under the duty of good faith. As UMIA acknowledges in its briefing, the "central focus" of Saltz's evidence was on UMIA's alleged failure to settle, not its duty to evaluate and investigate. So not only was the error slight, but it is unlikely to have affected the jury's decision about the main argument made by Saltz at trial.

---

[9] *See Beck*, 701 P.2d at 801 (citations omitted) (holding that the duty of good faith requires a first-party insurer to "diligently investigate the facts to enable it to determine whether a claim is valid" and "fairly evaluate the claim" made by the insured).

¶57 We affirm on this basis. We hold that the technical errors in instructions one and two were harmless, as they do not "undermine [our] confidence in the verdict." *SIRQ, Inc.*, 2016 UT 30, ¶ 32 (alteration in original) (citation and internal quotation marks omitted).

¶58 Regarding the third jury instruction, Utah law requires both first- and third-party insurers to act "promptly and reasonably" in accepting or rejecting the insured's claim for coverage. *Supra* ¶ 45. The jury instruction follows the language of our case law. It is not in error.

¶59 As to the fourth jury instruction, UMIA is right that we have not previously held that the duty of good faith encompasses a principle of non-retaliation. But we see no basis for concluding that the instruction was in error. The duty of good faith requires the insurer to "be as zealous in protecting the interests of its insured as it would in looking after its own." *Ammerman*, 430 P.2d at 579 (citations omitted). And it seems clear that an insurer is not zealously protecting an insured's interests if it retaliates against the insured.

¶60 We also uphold the fifth jury instruction. This instruction was correct in light of our above conclusion that an insurer has a duty to accept a settlement offer at or below policy limits if there is a substantial likelihood of an excess verdict. *Supra* ¶ 47.

¶61 Regarding the final jury instruction, the duty of good faith broadly requires that an insurer must "be as zealous in protecting the interests of its insured as it would in looking after its own." *Ammerman*, 430 P.2d at 579. This instruction could have been expanded upon—in setting forth specific obligations stemming from the duty of good faith. But the instruction as given was not inaccurate. At most, it made a redundant statement of the duty of good faith. And such a statement does not "undermine [our] confidence in the verdict." *SIRQ, Inc.*, 2016 UT 30, ¶ 32 (alteration in original) (citation and internal quotation marks omitted).

¶62 We affirm the district court's denial of UMIA's motion for a new trial. While jury instructions one and two were erroneous, the error was not serious enough to "undermine [our] confidence in the verdict." *Id.* Instructions three, four, and five were proper. And instruction six, while redundant, was harmless.

### D. Evidence of June 2017 Settlement Talks

¶63 Prior to trial, UMIA moved to exclude evidence of its actions during the June 2017 settlement talks. On appeal, UMIA asks for a new trial on the ground that this evidence—which it asserts was

prejudicial to its case—was barred under the plain language of Utah Rule of Evidence 408. This rule deems settlement offers and negotiations inadmissible "to prove or disprove liability for or the validity or amount of a disputed claim." Utah R. Evid. 408(a). The district court rejected this argument. Since "UMIA [was] not seeking to preclude evidence of its prior offers in the Judge Lawsuit and . . . intend[ed] to introduce evidence regarding those prior offers," the district court held that rule 408 did not apply. *Supra* ¶ 17. In so doing, the district court effectively found that UMIA had "opened the door"[10] to consideration of this category of evidence.[11]

¶64 We affirm on the ground that UMIA failed to carry its burden of persuasion on appeal. Under our appellate rules and case law, UMIA had the burden to "explain, with reasoned analysis supported by citations to legal authority and the record, why the [appellant] should prevail on appeal." Utah R. App. Proc. 24(a)(8); *see State v. Nielsen*, 2014 UT 10, ¶ 41, 326 P.3d 645 (appellants bear the "burden of persuasion"). To carry this burden, UMIA was obliged to engage with and respond to the grounds for the decision it is challenging on appeal.[12] And UMIA failed to carry this burden—by

---

[10] The idea of "opening the door" is "an evidentiary principle" that "allows the admission of otherwise inadmissible testimony to 'qualify, explain, or limit' testimony or evidence previously admitted." *Rodriguez v. State*, 753 So.2d 29, 42 (Fla. 2000) (citations omitted). This concept is "based on considerations of fairness and the truth-seeking function of a trial." *Id.* (citation and internal quotation marks omitted).

[11] The district court also stated that "[rule] 408 does not apply when a party is seeking to introduce evidence of offers . . . [that are] not [] offered to show . . . liability." UMIA contends that the district court incorrectly concluded that its actions were being offered to show only bad faith and not liability. It argues that rule 408 excludes the admission of its actions on the ground that they were also "designed" to settle UMIA's liability on the claim for breach of the duty of good faith. But even if rule 408 applies, UMIA's actions could still be admissible under the "opening the door" exception. And UMIA failed to address that question in its briefing on appeal.

[12] *Matter of Discipline of La Jeunesse*, 2018 UT 6, ¶¶ 27, 32, 416 P.3d 1122 (holding that the appellant has the "burden to identify the grounds for the district court's decision that it is challenging on appeal" and must argue why it should prevail with "reasoned

(continued . . .)

18

merely asserting that the plain language of rule 408 barred the evidence—and neglecting to adequately address the door-opening exception that formed a key basis of the district court's ruling. We decline to order a new trial on that ground.

### E. Punitive Damages

¶65 UMIA also moved to dismiss Saltz's request for punitive damages on summary judgment. The district court granted the motion, holding that there was "not sufficient evidence in the record" to meet the standard for such an award. We review a decision on summary judgment "for correctness, granting no deference to the [trial] court's conclusions, and we view the facts and all reasonable inferences in the light most favorable to the nonmoving party." *Bodell Constr. Co. v. Robbins*, 2009 UT 52, ¶ 16, 215 P.3d 933 (citation omitted). "Summary judgment is appropriate if 'reasonable jurors, properly instructed, would be able to come to only one conclusion.'" *Jones v. Mackey Price Thompson & Ostler*, 2015 UT 60, ¶ 27, 355 P.3d 1000 (quoting *Clegg v. Wasatch Cnty.*, 2010 UT 5, ¶ 15, 227 P.3d 1243). We reverse the district court's dismissal of Saltz's request for punitive damages under his claim for breach of the duty of good faith on the ground that a reasonable jury could conclude from the evidence that Saltz is entitled to an award of punitive damages.

¶66 A jury may award punitive damages if it finds that "it [has been] established by clear and convincing evidence that the acts or omissions of the tortfeasor are the result of . . . conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of others." UTAH CODE § 78B-8-201(1)(a). The question then is whether "the facts and all reasonable inferences" drawn from them in Saltz's favor could lead "reasonable jurors" to conclude that UMIA was knowingly and recklessly indifferent toward Saltz's rights. *See Jones*, 2015 UT 60, ¶ 27 (citation omitted).

¶67 A reasonable jury could conclude that UMIA "manifest[ed] a knowing and reckless indifference toward, and a disregard of, [Saltz's rights]." UTAH CODE § 78B-8-201(1)(a). The material facts at

---

analysis supported by citations to legal authority and the record"); *see also Arave v. Pineview W. Water Co.*, 2020 UT 67, ¶ 62, 477 P.3d 1239 (concluding that "[b]y failing to adequately analyze or argue" the ground on which we should rule in its favor, the appellant "fail[s] to meet its burden of persuasion and [] shift[s] the burden of research and argument to this court." (citations omitted)).

issue on Saltz's claim of a breach of the duty of good faith are undisputed. Both parties agree that Saltz clearly communicated his desire to settle the Judge Lawsuit and that UMIA delayed eight years in questioning coverage and filing a declaratory judgment action. They also agree that UMIA characterized Saltz's request to settle at the policy limits as "threats" in internal communications. And both acknowledge that UMIA's settlement offers dramatically decreased after this request from Saltz—from $200,000 to $15,000. A reasonable jury could infer that UMIA's sudden unwillingness to contribute meaningfully to settlement so close to trial was the product of reckless indifference toward Saltz's rights as its insured. Accordingly, we reverse the district court's dismissal of Saltz's request for punitive damages and remand for further proceedings.

### F. Attorney Fees on Appeal

¶68 Saltz asks that we award him the attorney fees he incurred in this appeal. A party is entitled to reasonable attorney fees incurred on appeal if he was awarded attorney fees below, "preserve[d] the issue of attorney fees" on appeal, and prevails on the issue that served as the basis for the award. *See Meadowbrook, LLC v. Flower*, 959 P.2d 115, 120 (Utah 1998); *see also* UTAH R. APP. PROC. 24(a)(9).

¶69 At trial, the jury awarded Saltz attorney fees under the express or implied terms of the insurance contract with UMIA, concluding that Saltz's fees were a foreseeable consequence of UMIA's breach of the implied covenant of good faith and fair dealing. *See, e.g.*, *Billings v. Union Bankers Ins. Co.*, 918 P.2d 461, 468 (Utah 1996) ("Attorney fees may be recoverable as consequential damages flowing from an insurer's breach of either the express or the implied terms of an insurance contract." (citations omitted)). And the district court entered a judgment for Saltz that included $987,877.62 in attorney fees.

¶70 Because he was awarded fees below—and because we hold in Saltz's favor on his claim for breach of the duty of good faith that was the basis for the award—Saltz is entitled to the reasonable attorney fees he incurred on appeal. We remand to the district court for further proceedings on the fee award.

### III

¶71 We affirm the district court's denial of UMIA's renewed motion for judgment as a matter of law on Saltz's promissory estoppel claim. A reasonable jury could have found that UMIA was estopped from denying coverage under Saltz's policy because Saltz presented evidence that UMIA's delay in reserving its rights

deprived him of opportunities to settle before the eventual 2017 agreement with Judge. While the district court improperly dismissed Saltz's corollary claim that UMIA had waived its right to disclaim coverage, we need not remand for further proceedings on that claim since Saltz already established coverage via promissory estoppel.

¶72 We also affirm the district court's denial of UMIA's renewed motion for judgment as a matter of law on Saltz's claim for breach of the duty of good faith. Saltz presented sufficient evidence of UMIA's breach, and UMIA was not entitled to a new trial because any errors the district court made in the jury instructions were harmless. And we affirm the district court's admission of evidence from the June 2017 settlement talks because UMIA did not sufficiently brief the issue of whether UMIA opened the door to the evidence by admitting evidence from other settlement talks.

¶73 We reverse the district court's dismissal of Saltz's request for punitive damages. We do so on the ground that a reasonable jury could conclude from the evidence that UMIA was knowingly and recklessly indifferent toward, and disregarded, Saltz's rights. Finally, we remand to the district court for further proceedings on Saltz's request for punitive damages and the award of attorney fees he incurred on appeal.

————————